COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
BENJAMIN S. LIN (232735)
(blin@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:  +1 650 843 5000
Facsimile:    +1 650 849 7400

Attorneys for Defendant
Apple Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ONE-E-WAY, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California Corporation,<br><br>Defendant. | Case No. 2:20-CV-06339-JAK-PDA<br><br>**APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE ONE-E-WAY'S INFRINGEMENT CONTENTIONS AND TO COMPEL SERVICE OF AMENDED INFRINGEMENT CONTENTIONS**<br><br>Date:        November 9, 2020<br>Time:        8:30AM<br>Honorable John A. Kronstadt<br><br>Scheduling Conference:<br>Date:        November 16, 2020<br>Time:        1:30PM |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES.......................... 2

I.    INTRODUCTION ......................................................................... 2

II.   STATEMENT OF FACTS.............................................................. 2

    A.    OEW Is a Serial Litigant. ...................................................... 2

    B.    OEW Asserts Three Patents Relating to Portable Wireless Music
        Devices. .................................................................................. 3

    C.    OEW Contends That It Practices the Asserted Patents. ........ 4

    D.    OEW Served Deficient Infringement Contentions and Refused
        to Fix Them. ........................................................................... 5

III.  LEGAL STANDARD ..................................................................... 6

IV.   ARGUMENT .................................................................................. 7

    A.    OEW Fails to Specifically Identify Each Accused Product, in
        Violation of S.P.R. 2.1.2. ...................................................... 7

        1.    OEW improperly refers to entire product lines that were
            introduced as early as 2001. ....................................... 7

        2.    OEW improperly purports to accuse products that are not
            identified in its contentions......................................... 8

    B.    OEW Fails to Identify Specifically Where Each Limitation of
        Each Asserted Claim is Found Within Each Accused Product, in
        Violation of S.P.R. 2.1.3. .................................................... 10

        1.    Deficient identification of accused "unique user code." .......... 11

        2.    Deficient accusation of a "receiver."....................... 13

        3.    Deficient accusation of a "direct conversion module." ............ 14

        4.    Deficient accusation against prior versions of Bluetooth........ 17

        5.    Deficient accusations of a "transmitter" "coupled to" a
            "portable audio player/source." ................................ 18

    C.    OEW Fails to Disclose the Basis For Its Contention That Its
        Products Practice the Patents, in Violation of S.P.R. 2.1.5. .............. 19

V.    CONCLUSION ............................................................................ 20

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i

APPLE'S NOTICE OF MOTION AND MOTION TO
STRIKE
2:20-CV-06339-JAK-PD

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anuva Mfg. Services, Inc. v. One-E-Way, Inc.*,
 No. 19GDCV01091 (Cal. Sup. Ct.)......................................................................2

*ASUS Comput. Int'l v. Round Rock Research, LLC*,
 No. 12–cv–02099, 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014)......................9

*Bender v. Infineon Techs. North Am. Corp.*,
 2010 WL 964197 (N.D. Cal. March 16, 2010) .................................................16

*BlackBerry Ltd. v. Facebook, Inc. et al.*,
 No. 2:18-cv-01844-GW-KS, slip op. (C.D. Cal. Aug. 31, 2018) .......................8

*Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*,
 No. 19-cv-6978, 2020 WL 3805805 (C.D. Cal. May 26, 2020) ..........................6

*In re Certain Wireless Headsets*,
 USITC Inv. No. 337-TA-943 ...............................................................................2

*Finjan Inc v. Proofpoint Inc.*,
 No. 13-cv-05808, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015)................*passim*

*Finjan, Inc. v. SonicWall, Inc.*,
 No. 17-cv-04467-BLE (VKD), 2019 WL 2077849 (N.D. Cal. May
 10, 2019)......................................................................................................*passim*

*Geovector, Corp. v. Samsung Elecs. Co. Ltd.*,
 No. 16-cv-02463, 2017 WL 76950 (N.D. Cal. Jan. 9, 2017)..............................9

*Mortg. Grader Inc. v. First Choice Loan Serv. Inc.*,
 811 F.3d 1314 (Fed. Cir. 2016) ......................................................................6, 8

*Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*,
 417 F.Supp. 2d 1121 (N.D. Cal. 2006)................................................................6

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
 467 F.3d 1355 (Fed. Cir. 2006) ...........................................................................6

*One-E-Way Inc. v. Audiovox Corp.*,
 No. 2-cv-00580 (C.D. Cal.) ..................................................................................2

**TABLE OF AUTHORITIES**
(continued)

Page

*One-E-Way Inc. v. Harman Int'l Industries Inc.*,
    No. 2012-cv-00603 (C.D. Cal.) .............................................................................. 2

*One-E-Way Inc. v. Imation Corp.*,
    No. 2-12-cv-00608 (C.D. Cal.) .............................................................................. 2

*One-E-Way Inc. v. JayBird Gear LLC*,
    No. 2-12-cv-00601, 2-12-cv-06135 (C.D. Cal.).................................................. 2

*One-E-Way Inc. v. Plantronics*,
    No. 2-11-cv-06673 (C.D. Cal.) .............................................................................. 2

*One-E-Way, Inc. v. 1624 O, LLC*,
    No. 30-2019-010543-CU-PA-CJC (Cal. Sup. Ct.)............................................. 3

*One-E-Way, Inc. v. Int'l Trade Comm'n*,
    859 F.3d 1059 (Fed. Cir. 2017) ............................................................................ 2

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sep. 26,
    2011) ......................................................................................................................... 9

*Theranos, Inc. v. Fuisz Pharma LLC*,
    No. 11-cv-05236-YGR, 2012 WL 6000798 (N.D. Cal. Nov. 30,
    2012) ....................................................................................................................... 16

*Uniloc 2017 LLC v. Apple, Inc.*,
    No. 19-cv-01904, 2019 WL 8810168 (N.D. Cal. Dec. 16, 2019)............ 6, 17, 19

*Uniloc USA, Inc. v. Apple Inc.*,
    No. 18-cv-00360, 2018 WL 3219486 (N.D. Cal. Jul. 2, 2018)........................ 7, 8

*Wells Fargo Bank v. One-E-Way, Inc., et a*l,
    No. BC618362 (Cal. Sup. Ct.)................................................................................ 2

*Wilson Sporting Goods Co. v. Monsta Athletics, LLC*,
    No. 19-cv-00738, 2020 WL 5835320 (C.D. Cal. Feb. 19, 2020) ............... 13, 20

*Zenith Elec., LLC v. Sceptre, Inc.*,
    No. LA 14-cv-05150 JAK (AJWx), 2015 U.S. Dist. LEXIS 199091
    (C.D. Cal. Nov. 2, 2015) ................................................................................... 6, 8

# TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

35 U.S.C.

§ 112 .............................................................................................................. 2

§ 286 .............................................................................................................. 7

**Other Authorities**

Fed.R.Civ.P. 11 .................................................................................................. 16

Local Rule

3-1(b) .......................................................................................................... 6, 9

3-1(c) .............................................................................................................. 6

7-3 .................................................................................................................. 1

Standing Patent Rule

2.1 ............................................................................................................... 5, 6

2.1.2 ........................................................................................................ 6, 7, 8

2.1.3 ...................................................................................................... *passim*

2.1.5 ....................................................................................................... 19, 20

2.2.3 ....................................................................................................... 19, 20

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 9, 2020, at 8:30 a.m., or as soon thereafter as the matter may be heard before the Honorable John A. Kronstadt at Courtroom 10B, located at First Street Courthouse, 350 W. First Street, Los Angeles, CA 90012, or in such other manner, time, and place as the Court may direct, Defendant Apple Inc. ("Apple") will, and hereby does, move this Court for an order striking the Infringement Contentions of Plaintiff One-E-Way, Inc. ("OEW") and compelling service of amended infringement contentions.  The motion is based on this Notice, the Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other argument and evidence as my be presented to the Court before or at the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3 that occurred on September 28, 2020 including lead counsel for both parties, wherein the parties reached impasse.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

APPLE'S NOTICE OF MOTION AND MOTION TO
STRIKE
2:20-CV-06339-JAK-PD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

OEW violated the Court's Standing Patent Rules by failing to disclose specific accused products, specific infringement theories, and the basis for OEW's contention that its products practice its asserted patents. During meet and confer, OEW refused to engage in good faith and only made the problems worse. The Court should strike OEW's non-compliant disclosures and compel compliance as set forth herein.

OEW's refusal to comply with the rules means that this case cannot proceed in an orderly manner as the rules contemplate. Without the requested relief, Apple will be denied the fair and timely notice of OEW's contentions that would enable Apple to properly investigate and prepare its defenses and responsive discovery disclosures as the rules envision.

## II.   STATEMENT OF FACTS

### A.   OEW Is a Serial Litigant.

OEW is no stranger to the courts. The present action is the latest in a long line of patent lawsuits filed by OEW in this District and at the International Trade Commission ("ITC") since 2011.[1] At the ITC, OEW's case proceeded through a claim construction ruling and a determination that OEW's asserted patents were invalid as indefinite under 35 U.S.C. § 112, though the Federal Circuit ultimately reversed the invalidity ruling and the litigation settled thereafter.[2]

Separate from its patent lawsuits, OEW has been sued by multiple creditors on claims that OEW failed to repay its debts, which have so far resulted in the entry of at least one judgment against OEW.[3] OEW also litigated an arbitration against an

---

[1] *See, e.g., One-E-Way Inc. v. Plantronics*, No. 2-11-cv-06673 (C.D. Cal.); *One-E-Way Inc. v. Imation Corp.*, No. 2-12-cv-00608 (C.D. Cal.); *One-E-Way Inc. v. Harman Int'l Industries Inc.*, No. 2012-cv-00603 (C.D. Cal.); *One-E-Way Inc. v. JayBird Gear LLC*, No. 2-12-cv-00601, 2-12-cv-06135 (C.D. Cal.); *One-E-Way Inc. v. Audiovox Corp.*, No. 2-cv-00580 (C.D. Cal.); *In re Certain Wireless Headsets*, USITC Inv. No. 337-TA-943.
[2] *One-E-Way, Inc. v. Int'l Trade Comm'n*, 859 F.3d 1059 (Fed. Cir. 2017).
[3] *Wells Fargo Bank v. One-E-Way, Inc., et a*l, No. BC618362 (Cal. Sup. Ct.); *Anuva Mfg. Services, Inc. v. One-E-Way, Inc.*, No. 19GDCV01091 (Cal. Sup. Ct.).

intellectual property funding firm that resulted in a mixed judgment.[4]

**B.    OEW Asserts Three Patents Relating to Portable Wireless Music Devices.**

OEW purports to own a family of related patents, each entitled "Wireless Digital Audio Music System," that share substantially the same written description and purport to claim priority to an abandoned application filed in December 2001.

The patents purport to describe a "wireless digital audio system" for playing music.[5]  The patents describe that "audio player devices" were known in the prior art, such as portable CD players, portable cassette players, and portable radios.[6]  The patents state that prior art audio players included "an analog headphone jack to which headphones may be connected by wire."[7]  The patents purport to describe a system that includes two devices: a "battery powered transmitter" that plugs into the headphone jack of an audio player, and a "battery powered headphone receiver" that receives coded digital wireless transmission from the transmitter that had been plugged into the device.[8]  Figure 1 of the patents, reproduced to the right, shows a preferred embodiment.  The figure shows an "audio source **80**" (a "portable music audio player") in the lower left, a battery powered transmitter **20** plugged into the headphone jack **82** of the audio player **80**, and "battery powered receiver **50**" in the form of headphones.



The patents state that the battery powered transmitter that plugs into the device

---

[4] *One-E-Way, Inc. v. 1624 O, LLC*, No. 30-2019-010543-CU-PA-CJC (Cal. Sup. Ct.).
[5] Dkt. 22-1, '391 patent.
[6] *Id*., col. 1:19-34.
[7] *Id*., col. 1:32-34.
[8] *Id*., col. 1:47-53, 2:30-43.

contains a code generator **44** that creates and transmits a "unique user code."[9]  The unique user code "is specifically associated with one wireless digital audio system user, and it is the only code recognized by the battery powered headphone receiver **50** operated by a particular user."[10]

Though OEW originally included Apple's subsidiary Beats Electronics as one of the accused infringers at the ITC, OEW dismissed Beats Electronics from that case in early 2015.  Thereafter, OEW waited five years without further contacting Apple. On July 18, 2020, OEW sued Apple in this action, alleging that certain Apple and Beats Electronics headphone, earphone, and audio player products with Bluetooth wireless audio capabilities infringed at least one "receiver" claim of two of those patents: U.S. Patent Nos. 8,131,391 ("'391 patent") and 10,468,047 ("'047 patent").[11]

On September 15, 2020, a few hours before serving its Infringement Contentions, OEW filed an amended complaint that added U.S. Patent No. 10,129,627 ("'627 patent"), which had been in existence for well over two years,  and newly alleged that unspecified iPhone, iPad, iPod, and Apple Watch products with Bluetooth wireless audio capabilities infringed certain "transmitter" claims.[12]

### C.    OEW Contends That It Practices the Asserted Patents.

OEW's complaint alleges that OEW makes and sells products that practice its patents: "One-E-Way manufactures and sells wireless audio devices covered by the Asserted Patents" and "sells its patented wireless audio products through at least its online retail outlet, available at https://shop.wayvz.com/."[13]  The website offers dongle type products, similar to the patent embodiment, that plug into headphone jacks on devices like MP3 player and airplane seat back movie players.[14]

Despite the clear allegations in its complaint and a similar claim on its website

---

[9] *Id.*, col. 2:54-59.
[10] *Id.*, col. 2:54-59.
[11] Dkt. No. 1.
[12] Dkt. No. 22.
[13] Dkt. No. 22, ¶¶ 34, 14.
[14] *See*, *e.g.*, https://shop.wayvz.com/products/wireless-transmitter.

Cooley LLP
Attorneys at Law
Palo Alto

4

APPLE'S NOTICE OF MOTION AND MOTION TO
STRIKE
2:20-CV-06339-JAK-PD

that its products are "Patented,"[15] OEW failed to comply with the Standing Patent Rules by withholding the basis for its contention that its products practice the asserted patents, as discussed below.

### D. OEW Served Deficient Infringement Contentions and Refused to Fix Them.

On September 15, 2020, OEW served its "Disclosure of Asserted Claims and Infringement Contentions" ("Infringement Contentions") as required by Standing Patent Rule 2.1 and the Court's scheduling order.[16]  The contentions are rife with prejudicial deficiencies that violate the requirements of the Standing Patent Rules, as explained further below.

Apple promptly notified OEW of the deficiencies and explained how OEW's failure to comply with the Standing Patent Rules prejudiced Apple's defense.[17] Although OEW had no good cause to amend its contentions that violated the Standing Patent Rules, Apple offered that in the interests of amicable resolution to avoid burdening the Court, Apple would accept amended contentions that fixed the deficiencies.[18]

OEW refused to serve supplemental contentions to remedy the deficiencies.[19] Instead, OEW confirmed that it had not performed an investigation of each Apple product to determine whether or not it might infringe, but instead expected Apple to provide technical discovery so that OEW could conduct a fishing expedition for a potential infringement theory.[20]  OEW also admitted that although its infringement allegations rely in part on the specifications for complying with the Bluetooth standard, its asserted claims include requirements not addressed by Bluetooth that OEW would need to look for separately in each specific accused product.[21]

---

[15] *See* https://one-e-way.com/technology/ ("One-E-Way™ Wireless Audio Headwear – PATENTED").
[16] Declaration of Lowell D. Mead ("Mead Decl."), Ex. A.
[17] Mead Decl., Ex. B.
[18] *Id.*
[19] Mead Decl., Ex. C.
[20] Mead Decl., ¶ 2, Ex. D.
[21] *Id.*

The parties met and conferred and reached impasse, as OEW refused to supplement its contentions.[22]

## III.  LEGAL STANDARD

Patent local rules, including the Standing Patent Rules that govern this case, "are essentially a series of case management orders that fall within a district court's broad power to control its docket and enforce its order." *Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*, No. 19-cv-6978, 2020 WL 3805805, at *1 (C.D. Cal. May 26, 2020) (citing *Mortg. Grader Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314, 1320-21 (Fed. Cir. 2016)).  Patent local rules seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories.  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006).

The "Standing Patent Rules require that, early in a case, a patent owner serve a 'Disclosure of Asserted Claims and Infringement Contentions.'" *Caravan Canopy,* 2020 WL 3805805, at *2 (citing S.P.R. 2.1).  This disclosure must identify "[s]eparately for each asserted claim, each Accused Instrumentality.  This identification shall be as specific as reasonably possible." S.P.R. 2.1.2.  It must also include "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."  S.P.R. 2.1.3.

The patent rules in the Northern District of California set forth substantially similar requirements.  *Uniloc 2017 LLC v. Apple, Inc.*, No. 19-cv-01904, 2019 WL 8810168, at *4 (N.D. Cal. Dec. 16, 2019) (discussing specificity requirements for Patent Local Rule 3-1(b) and (c)).  As this Court has remarked, "[t]he infringement contentions required by these local patent rules 'require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Zenith Elec., LLC v. Sceptre, Inc.*, No. LA 14-cv-05150 JAK (AJWx), 2015 U.S. Dist. LEXIS 199091 at *3 (C.D. Cal. Nov. 2, 2015) (citing *Nova*

---

[22] Mead Decl., ¶ 2, Ex. D.

*Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F.Supp. 2d 1121, 1122-23 (N.D. Cal. 2006)).

## IV.   ARGUMENT

### A.   OEW Fails to Specifically Identify Each Accused Product, in Violation of S.P.R. 2.1.2.

OEW's Infringement Contentions fail to specifically identify each product accused of infringement.  S.P.R. 2.1.2 (requiring identification of "each" accused instrumentality "as specific as reasonably possible" and "[s]eparately" for each asserted claim).  OEW's contentions violate this core requirement in two fundamental ways.

#### 1.   OEW improperly refers to entire product lines that were introduced as early as 2001.

OEW's contentions improperly seek to encompass several entire classes of product line—"iPhone, iPad, iPod, and Apple Watch"—as purported "Accused Transmitter Device" products.[23]  iPhone, iPad, iPod, and Apple Watch are product lines that comprise many different versions and models over the years.  Many of the product models in these product lines indisputably should never be accused in this case.  The first patent-in-suit (the '391 patent) did not issue until 2012 and there can be no infringement liability prior to July 2014.[24]  The iPod product line, for example, includes early model iPod devices released starting in 2001, with no Bluetooth; the first iPhone was introduced in 2007, and the first iPad in 2010.[25]  As such, broadly accusing "iPhone, iPad, iPod, and Apple Watch" fails to comply with the Standing Patent Rules.  S.P.R. 2.1.2 (requiring identification of "each" accused instrumentality "as specific as reasonably possible").  District courts have repeatedly held that these types of "broad categorical identifications" such as "Apple tablets" should be stricken and that "allegations should be limited to the products specifically identified."

---

[23] Mead Decl., Ex. A at 005, 063, 095.
[24] *See* 35 U.S.C. § 286.
[25] *See* https://www.apple.com/newsroom/2001/10/23Apple-Presents-iPod/; https://www.apple.com/newsroom/2007/01/09Apple-Reinvents-the-Phone-with-iPhone/; https://www.apple.com/newsroom/2010/01/27Apple-Launches-iPad/.

*Uniloc USA, Inc. v. Apple Inc.*, No. 18-cv-00360, 2018 WL 3219486, at *3 (N.D. Cal. Jul. 2, 2018); *Finjan Inc v. Proofpoint Inc.*, No. 13-cv-05808, 2015 WL 1517920, at *5-6 (N.D. Cal. Apr. 2, 2015) (striking improper open-ended accusation: "[t]he Local Rules do not permit 'broad categorical identifications'" of accused products) (citation omitted).[26]

As such, OEW's accusation against the "Accused Transmitter Devices," which consists of improper wholesale reference to the entire "iPhone, iPad, iPod, and Apple Watch" product lines, should be stricken. *Uniloc USA*, 2018 WL 3219486, at *3 (granting motion to strike and ruling that patentee "will be limited to the accused products actually listed in its infringement contentions").

### 2. OEW improperly purports to accuse products that are not identified in its contentions.

Beyond the names of products and product lines, OEW's contentions also improperly purport to accuse "any prior or subsequent commercial iteration of the product if that product was/is capable of wirelessly transmitting or receiving audio data using Bluetooth connectivity in the manner set forth" in OEW's claim charts.[27] But the Standing Patent Rules required OEW to separately identify "each" accused product "as specific as reasonably as possible." S.P.R. 2.1.2. The Court should strike OEW's vague, open-ended attempt to accuse additional products that are not specifically identified in OEW's contentions. *Proofpoint*, 2015 WL 1517920, at *5 (striking accusation that "purports to identify infringing products by their functionality" beyond seven specifically-identified products); *Finjan, Inc. v.*

---

[26] Courts in this District often look to decisions from the Northern District of California for persuasive authority regarding the similar patent rules provisions. *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1320 (Fed. Cir. 2016) ("Judge Guilford's Standing Patent Rules are similar to the Patent Local Rules adopted by the Northern District of California and many other districts."); *Zenith Elec.*, 2015 U.S. Dist. LEXIS 199091 at *3-4 (citing N.D. Cal. case law with respect to dispute under Standing Patent Rules); *BlackBerry Ltd. v. Facebook, Inc. et al.*, No. 2:18-cv-01844-GW-KS, slip op. at 2 (C.D. Cal. Aug. 31, 2018) ("Although the Court adopts Judge Guilford's Patent Local Rules, to the extent necessary and appropriate, the parties may rely on legal authority developed based on the Northern District of California's Patent Local Rules . . .").

[27] Mead Decl., Ex. A at 002-003.

*SonicWall, Inc.*, No. 17-cv-04467-BLE (VKD), 2019 WL 2077849, at *3-4 (N.D. Cal. May 10, 2019) (striking "open-ended" descriptions of accused products with "placeholder references to unspecified products, services, or components" that render the "disclosure of the accused instrumentalities unacceptably vague"); *Geovector, Corp. v. Samsung Elecs. Co. Ltd.*, No. 16-cv-02463, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) (the patent rules do "not permit parties to identify accused products by using categorical or functional identifications, or limited, representative examples.") (internal citations omitted).

During meet and confer, OEW suggested that it was entitled to shift the burden to Apple to investigate and guess which products with Bluetooth capabilities OEW might end up wanting to accuse of infringement. OEW is wrong. OEW admits, as it must, that merely having Bluetooth capability is insufficient for OEW's infringement theory because the asserted claims recite specific physical device requirements (such as, for example, a "direct conversion module" and other elements) that Bluetooth does not address or require.[28]  OEW needed to do the work and identify the specific products that it contends are covered by the claims, as required by the Standing Patent Rules. *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sep. 26, 2011) ("Even if it would have been easy for [defendant] to compile an accurate list of all the devices Oracle considered to be Android devices, Rule 3-1(b) required Oracle to provide such a list in its disclosure of infringement contentions."); *ASUS Comput. Int'l v. Round Rock Research, LLC*, No. 12–cv–02099, 2014 WL 1463609, at *6 (N.D. Cal. Apr. 11, 2014) ("Although identifying that a component practices a standard may be useful for proving an infringement theory across several products that contain that component, identifying a standard is not sufficient to specifically name an accused product.").

OEW also cannot backfill its contentions with untimely new statements in

---

[28] Mead Decl., ¶ 2, Ex. D.

1  correspondence.   After Apple pointed out the deficiencies, OEW refused to

2  supplement its Infringement Contentions but sent a letter that contained a new list of

3  dozens of products that were not identified or charted in its contentions.[29]  Those

4  belatedly-identified products are not at issue in the case:

5  > To the extent any of [Plaintiff]'s explanations justify its
   > complete failure to address the missing products, those
6  > explanations should have been provided in its infringement
   > contentions.  [Plaintiff] may not serve infringement
7  > contentions as required by the Patent Local Rules and then
   > informally supplement them after the fact (either through
8  > correspondence with Defendants or through briefing to the
   > Court). The Patent Local Rules provide a mechanism to
9  > supplement contentions after service, which [Plaintiff] has
   > not followed.
10

11  *Proofpoint*, 2015 WL 1517920, at *5.

12  **B.**    **OEW Fails to Identify Specifically Where Each Limitation of Each
        Asserted Claim is Found Within Each Accused Product, in**
13      **Violation of S.P.R. 2.1.3.**

14  OEW's Infringement Contentions also fail to sufficiently specify OEW's

15  infringement theories.  Standing Patent Rule 2.1.3 requires a "[a] chart identifying

16  *specifically* where *each* limitation of each asserted claim is found *within each*

17  *Accused Instrumentality*."  S.P.R. 2.1.3. (emphasis added).  Instead of providing this

18  required disclosure, OEW provided a single infringement claim chart per patent that

19  failed to specify where, if anywhere, numerous claim limitations might allegedly be

20  found in any accused product.

21  As an overarching defect, OEW's contentions improperly lump together

22  numerous different types of products into two groups—"Accused Receiver Device"

23  and "Accused Transmitter Device"—without identifying specifically where each

24  limitation of each asserted claim is alleged found within each accused product.[30]  As

25  a result, OEW's claim charts gloss over and fail to specifically address each accused

26  product, resulting in numerous material deficiencies.  For the "Accused Transmitter

27

28  ---
[29] Mead Decl., Ex. C at 2.
[30] Mead Decl., Ex. A at 005, 063, 095, *passim*.

Cooley LLP
Attorneys at Law
Palo Alto

10

APPLE'S NOTICE OF MOTION AND MOTION TO
STRIKE
2:20-CV-06339-JAK-PD

1    Devices," the contentions also fail to specifically identify any accused iPhone, iPad,

2    iPod, or Apple Watch product models within those product lines, as discussed

3    previously.

4    While OEW's claim charts are rife with deficiencies, Apple by this motion

5    seeks relief regarding the following five issues.[31]

6    ### 1.    Deficient identification of accused "unique user code."

7    All of the asserted claims recite the use of a "unique user code" in connection

8    with wireless transmission.[32]  At the ITC, this term was construed to mean "fixed

9    code (bit sequence) specifically associated with one user of a device(s)."[33]

10   OEW's contentions fail to specifically identify where the "unique user code"

11   is found in each accused product.  OEW relies on the publicly available Bluetooth

12   5.0 specification for this limitation.  But OEW only parrots the claim language and

13   states that each product may receive or transmit "a unique user code."  OEW then

14   block-quotes lengthy portions of a Bluetooth specification that set forth various

15   different codes and data as "example" citations, though it never specifies any that are

16   "specifically associated with one user of a device(s)."  OEW's contentions state:

17   Each Accused Receiver Device is configured to receive a
18   unique user code. For example:

19   1.3 ACCESS CODES

20   In the Bluetooth system all transmissions over the
     physical channel begin with an access code. Three
21   different access codes are defined, see also Section 6.3.1:

22   • device access code (DAC)

23   • channel access code (CAC)

24   • inquiry access code (IAC)

25   All access codes are derived from the LAP of a device
     address or an inquiry address. The device access code is

26   _____
     [31] Apple may rely upon other deficiencies for the merits of establishing non-
27   infringement at a later appropriate stage.
     [32] E.g., Mead Decl., Ex. A, at 006-007, 015-016, 026-027, 037-038, 045-045-046,
28   053-054, 064, 085, 092-093, 096-097, 107-109, 118-120.
     [33] Mead Decl., Ex. F, at 39.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

APPLE'S NOTICE OF MOTION AND MOTION TO
STRIKE
2:20-CV-06339-JAK-PD

used during page, page scan and page response substates and shall be derived from the paged device's BD_ADDR. The channel access code is used in the CONNECTION state, . . ..

The access code also indicates to the receiver the arrival of a packet. It is used for timing synchronization and offset compensation. The receiver correlates against the entire synchronization word in the access code, providing very robust signaling.

(BT Specification 5.0, Vol. 2, Part B, Section 1.3.)

*See also*, for example:

Each Bluetooth device shall be allocated a unique 48-bit Bluetooth device address (BD_ADDR). The address shall be a 48-bit extended unique identifier (EUI-48) created in accordance with section 8.2 ("Universal addresses") of the IEEE 802-2014 standard (http://standards.ieee.org/findstds/standard/802-2014.html). Creation of a valid EUI-48 requires one of the following MAC Address Block types to be obtained from the IEEE Registration Authority:

• MAC Address Block Large (MA-L)

• MAC Address Block Medium (MA-M)

• MAC Address Block Small (MA-S)

(BT Specification 5.0, Vol. 2, Part B, Section 1.2.)

*See also*, for example, BT Specification 5.0, Vol. 1, Part A, Sections 1.2, 1.3, 3.2.1 and 3.3; Vol. 2, Part B, Sections 2, 4.2, 6.4.[34]

OEW's contentions thus fail to identify which of the access codes or blocks constitute the specific accused "unique user code" from among this lengthy open-ended set of purported "example" citations, in violation of Standing Patent Rule 2.1.3. OEW's "theory of infringement . . . may be hidden somewhere in that paragraph, but it is not readily apparent." *Proofpoint*, 2015 WL 1517920, at *7 ("Neither the Court nor the Defendants should be required to guess which aspects of the accused products allegedly infringe each claim element."). "More specificity is required as to

---

[34] *E.g.*, Mead Decl., Ex. A at 006-007, 015-016, 026-027, 037-038, 045-045-046, 053-054, 064, 085, 092-093, 096-097, 107-109, 118-120.

Plaintiff's infringement positions." *Wilson Sporting Goods Co. v. Monsta Athletics, LLC*, No. 19-cv-00738, 2020 WL 5835320 *2 (C.D. Cal. Feb. 19, 2020).  OEW violates the basic maxim that it "should not 'hide the ball' in its infringement contentions (or in any aspect of discovery, really)." *Id.*

During meet and confer, OEW only made the problem worse.  OEW doubled down on its improper open-ended "examples" approach, asserting that "there are multiple bit sequences that may satisfy the claim language" and then identifying "[f]or example . . . at least" two purported examples.[35] *SonicWall*, 2019 WL 2077849 at *5 (finding that "contentions are not sufficiently specific" where they point to "*examples* only") (emphasis in original).

The Court should compel OEW to specify precisely what information it accuses as the "unique user code" in the Bluetooth specification.

## 2.    Deficient accusation of a "receiver."

Most of the asserted claims require a "receiver," such as "a portable digital audio headphone receiver."[36]  OEW's contentions state that each entire Accused Receiver Device "is a . . . receiver" as claimed: "[e]ach Accused Receiver Device **is** a digital audio spread spectrum receiver."[37]  However, the Accused Receiver Devices contain numerous different pieces and components (including chips that receive wireless communications).  OEW's contentions fail to identify any specific receiver component(s) within in each product. For example, the accused AirPods and AirPods Pro products include three separate items, as illustrated in the graphic to the right:  two separate wireless earbuds (left and right) and a charging case.[38] Inside those items are various subcomponents.  OEW's contentions, however, vaguely and ambiguously suggest that the entire AirPods product as a whole—



---

[35] Mead Decl. Ex. C at 5-6.
[36] *E.g.*, Mead Decl. Ex. A, at 006, 019, 025, 030, 037, 047-048, 056-057, 064, 077, 096, 107.
[37] *See id.* (emphasis added).
[38] *See* https://www.apple.com/airpods/.

1    including left earbud, right earbud, and charging case—"is a . . . receiver."

2    *SonicWall*, 2019 WL 2077849 at *5 ("These contentions are not sufficiently specific.

3    . . . To the extent Finjan contends that the SonicWall Gateways or ESA products

4    themselves are the 'Internet application running on the computer,' such contention is

5    not clearly stated").

6         The Court should compel OEW to <u>specifically</u> identify what it contends is the

7    accused "receiver" for <u>each</u> accused product, as required by Standing Patent Rule

8    2.1.3. For example, for the accused AirPods and AirPods Pro products, if OEW

9    contends that the accused "receiver" is the combination of left earbud, right earbud,

10   and carrying case, or some subset of those items (or components within those items),

11   it needs to specifically identify what it contends is the "receiver" for purposes of its

12   infringement theory. The same goes for every other accused "receiver" product.

13   OEW needs to specify that the entire product, or some specifically identified subset

14   of components in the product, is the accused "receiver" for purposes of OEW's

15   infringement theory.

16            **3.    Deficient accusation of a "direct conversion module."**

17        OEW's contentions fail to identify the required "direct conversion module" in

18   the accused products. Most of the asserted claims recite a "direct conversion module"

19   used to receive an incoming wireless transmission and convert its frequency.[39] At

20   the ITC, this term was construed to mean a "module for converting radio frequency

21   to baseband or very near baseband *in a single frequency conversion without an*

22   *intermediate frequency*."[40]  During patent prosecution, OEW distinguished its

23   claimed "direct" conversion technique from other "often used" conversion

24   techniques that use intermediate frequencies:  "The DCR [(direct conversion

25   module)] disclosed in the present invention, among other things, performs direct

26   down conversion from radio frequency (RF) to baseband or (very near baseband),

27

28   _____
     [39] Mead Decl. Ex. A, 008, 019, 031, 039, 048, 057, 067, 079, 099.
     [40] Mead Decl. Ex. F at 43 (emphasis added).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

APPLE'S NOTICE OF MOTION AND MOTION TO
STRIKE
2:20-CV-06339-JAK-PD

1   thus omitting intermediate frequency (IF) down conversion components that are
2   often used."[41]

3       OEW's contentions fail to specify where, if anywhere, the claimed "direct
4   conversion module" is allegedly found within any accused Apple product.  OEW
5   proclaims that it knows this element is present in the products.  OEW states, without
6   qualification:  "Each Accused Receiver Device has a direct conversion module."[42]
7   But merely "parroting claim language" does not satisfy the patent rules.  *Proofpoint*,
8   2015 WL 1517920, at *6.  Nowhere do the charts identify "specifically where" this
9   module is allegedly found within each product as the Standing Patent Rules require.
10  S.P.R. 2.1.3.  Instead, the charts only allege that "Apple promotes the low power
11  consumption characteristics of the accused devices" and point to a section of the
12  Bluetooth 5.0 specification, none of which requires a direct frequency conversion.[43]

13      As such, OEW should be compelled to disclose specifically where the accused
14  products contain the "direct conversion module" that OEW states is present.
15  *Proofpoint*, 2015 WL 1517920, at *6 (the infringement contentions disclosure
16  required by the patent rules is "so specific that either reverse engineering or its
17  equivalent is required.").

18      During meet and confer, OEW did not identify any basis for its assertion that
19  a direct conversion module is present in any accused product.  Instead, OEW implied
20  that any direct or indirect frequency conversion technique would satisfy the claim
21  language, but that would eviscerate the meaning of the claimed "direct" conversion
22  technique.  Indeed, OEW itself admitted at the ITC that this term requires conversion
23  "without first converting to an intermediate frequency," consistent with OEW
24  distinguishing the use of an intermediate frequency as an "often used" technique.[44]

25      More troublingly, OEW indicated that it had not performed any product
26

27  [41] *Id*. at 42.
    [42] Mead Decl. Ex. A at 008, 019, 031, 039, 048, 057, 067, 079, 099.
28  [43] *See id*.
    [44] Mead Decl. Ex. F at 39-43.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15

APPLE'S NOTICE OF MOTION AND MOTION TO
STRIKE
2:20-CV-06339-JAK-PD

testing, reverse engineering, or other inspection and analysis of each of Apple's products in order to determine whether or not the products contained a "direct conversion module."[45]   But OEW nevertheless stated in its contentions, without qualification, that "[e]ach Accused Receiver Device has a direct conversion module." OEW cannot avoid the disclosure requirements of the Standing Patent Rules by withholding the basis for that unequivocal statement.   *Bender v. Infineon Techs. North Am. Corp.*, 2010 WL 964197, at *1 (N.D. Cal. March 16, 2010) ("[P]laintiff is required to include [in its] infringement contentions all facts known to it, including those discovered in its Fed.R.Civ.P. 11 pre-filing investigation."); *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-cv-05236-YGR, 2012 WL 6000798, at *6 (N.D. Cal. Nov. 30, 2012) (striking infringement contentions: "Even if little publicly-known information about Theranos' technologies is available, Fuisz's obligations under the Local Rules, Fed. R. Civ. P. 11, or other Federal Circuit authority are not obviated."); *Proofpoint*, 2015 WL 1517920 at *9 (compelling disclosure of basis for infringement allegation: "Finjan's infringement contentions do not on their face reflect the results of the 'claim by claim, element by element' investigation required by Rule 11.").

OEW also suggested that it improperly sought to conduct a fishing expedition in discovery in the hope of finding a basis to allege infringement, but the patent rules required OEW to disclose the specific basis (if any) for its assertion that "[e]ach Accused Receiver Device has a direct conversion module."   *Theranos*, 2012 WL 6000798, at *6 ("By arguing that Theranos' information is not publicly-available and by offering to amend the Contentions only after discovery has occurred, Fuisz is attempting to ignore their obligations and shift the burden to Theranos.  Such tactic is improper.") (internal citation omitted); *Proofpoint*, 2015 WL 1517920 at *9 (the "flexibility" in cases involving non-public information "does not mean that a party may delay providing *any* comprehensible theory of infringement" until after receiving discovery) (emphasis in original).

---

[45] Mead Decl. ¶ 2, Ex. D.

**4.     Deficient accusation against prior versions of Bluetooth.**

OEW's contentions also improperly attempt to encompass multiple versions of the Bluetooth communication standard back to version 2.1, but fail to chart anything other than version 5.0.  All of the citations in OEW's claim charts are only to the Bluetooth version 5.0 specification and no other version.[46]  However, OEW improperly states that "each citation to Bluetooth 5.0 should be understood to also refer to the corresponding sections in each Bluetooth specification from version 2.1 onward, _such as_ Bluetooth specification 4.0, 4.1 and 4.2," without including in its contentions any citations to any other version.[47]

OEW could not simply allege that any product with Bluetooth infringes.  Indeed, OEW made a tactical decision not to cite early versions of Bluetooth in its Infringement Contentions because versions of Bluetooth from the 1990s are prior art to the asserted patents.[48]  OEW did not invent Bluetooth and had no involvement in the development of Bluetooth.

During meet and confer, OEW confirmed that its contentions could have cited other versions of Bluetooth but did not do so, and OEW refused Apple's offer to accept amended contentions.[49]  What is worse, while OEW subsequently sent a letter that contained untimely citations to sections of versions 4.0, 4.1, and 4.2, the letter still left unaddressed the Infringement Contentions' improper reference to "the corresponding sections in each Bluetooth specification from version 2.1 onward."[50]

If OEW wanted to raise an infringement theory relying on any version of Bluetooth other than version 5.0, its contentions needed to specifically identify where each limitation is found in each such version, as required by Standing Patent Rule 2.1.3.  _Uniloc 2017_, 2019 WL 8810168, at *8 (holding that plaintiff needed to

---

[46] Mead Decl., Ex. A.
[47] _Id_. at 005, 063, 095 (emphasis added).
[48] _See, e.g._, https://www.mobileindustryreview.com/2017/08/the-history-of-bluetooth.html; https://www.androidauthority.com/history-bluetooth-explained-846345/.
[49] Mead Decl., ¶ 2, Ex. D at 2.
[50] Mead Decl., Ex. C at 4-5.

"explain[e] where and how each limitation of each claim is met, specifying what version of Bluetooth it is accusing of infringement . . ."). The Court should strike OEW's improper reference to "the corresponding sections in each Bluetooth specification from version 2.1 onward" because OEW failed to chart anything other than version 5.0.

### 5. Deficient accusations of a "transmitter" "coupled to" a "portable audio player/source."

OEW's contentions are similarly deficient with respect to claim elements that require a "transmitter" that is "coupled to" a "portable audio player" or a "portable audio source." In the event that OEW is permitted to maintain any infringement assertion against any accused "transmitter" product, OEW should be compelled to disclose its specific infringement theory for each such product.

As discussed previously, the asserted patents contemplate a wireless "transmitter" device, like a dongle, that is plugged into the headphone jack of a music player device (such as a portable MP3 player). Several asserted claims accordingly recite a "transmitter" that is "coupled to" a "portable audio player" or "portable audio source," such as a "transmitter operatively coupled to said portable audio player" and similar limitations.[51]

OEW's contentions are silent on any accused "portable audio player" (or "portable audio source") that is "coupled to" a "transmitter" as claimed.[52] Nowhere do the contentions specifically identify a coupling between an accused portable audio player/source and an accused transmitter. *SonicWall*, 2019 WL 2077849, at *4 ("the problem is that Finjan nowhere identifies what 'the Capture ATP and Cloud Sandbox computers' are . . . Finjan must amend its contentions to identify where the computer that houses the network interface of claim 6 may be found in the accused Capture ATP instrumentality.").

If anything, OEW's contentions nonsensically suggest that a single "Accused

---

[51] Mead Decl., Ex. A at 015-017, 019-022, 026-028, 031-033, 089-090, 118-120.
[52] *See id.*

CooLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18

APPLE'S NOTICE OF MOTION AND MOTION TO
STRIKE
2:20-CV-06339-JAK-PD

Transmitter Device," such as an entire iPhone device, is the accused "transmitter" but is also, at the same time, the accused "portable audio player."[53]  But OEW fails to explain how a single iPhone device could possibly be "coupled to" itself.  The "infringement theory is unclear as written."  *Uniloc 2017*, 2019 WL 8810168, at *8; *SonicWall*, 2019 WL 2077849 at *5 ("To the extent Finjan contends that the SonicWall Gateways or ESA products themselves are the 'Internet application running on the computer,' such contention is not clearly stated").

Again, OEW shed no light during meet and confer.  If the Court does not strike the unspecified "Accused Transmitter Devices" entirely, the Court should compel OEW to specifically identify for each accused "transmitter" product (1) the accused "transmitter," (2) the accused "portable audio player," and (3) the accused functionality where those two components are allegedly "coupled to" each other.

## C. OEW Fails to Disclose the Basis For Its Contention That Its Products Practice the Patents, in Violation of S.P.R. 2.1.5.

Finally, OEW failed to disclose the basis for its pleaded allegations that "One-E-Way manufactures and sells wireless audio devices covered by the Asserted Patents."[54]  The Standing Patent Rules require:

> If a party claiming patent infringement wishes to preserve the right to rely, *for any purpose*, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party shall identify, separately for each asserted claim, each such apparatus, product, device, process, method, act or other instrumentality that incorporates or reflects that particular claim.

S.P.R. 2.1.5 (emphasis added).  Relatedly, if a party identifies instrumentalities under S.P.R. 2.1.5, it must produce "documents sufficient to show the operation of any aspects or elements of such instrumentalities the patent claimant relies upon as embodying any asserted claims." S.P.R. 2.2.3.  "This creates a discovery obligation"

---

[53] *E.g.*, Mead Decl., Ex. A at 014-015, 025-026, 118-120 (stating that "Each Accused Transmitter Device is a digital audio spread spectrum transmitter" and "Apple promotes each Accused Transmitter Device as providing audio, including music") (emphasis added), 089-090.
[54] Dkt. No. 22, ¶¶ 14, 34.

with which OEW must comply.  *Wilson Sporting Goods*, 2020 WL 5835320, at *3. Thus, since OEW's complaint alleges that its products practice the asserted patents, OEW needed to (1) specifically identify each such product for each applicable asserted claim, and (2) produce documents sufficient to show the relevant operation of each such product.

OEW failed to do so.  OEW's Infringement Contentions state that it "does not intend to rely on its own products practicing any of the Asserted Claims *to prove infringement*."[55]  OEW also did not produce any documents evidencing the operation of its products that allegedly practice the patents.  The rules, however, required OEW to provide the necessary disclosures if it desired to preserve the right to rely on practicing its patents "*for any purpose*."  S.P.R. 2.1.5 (emphasis added).

During meet and confer, OEW refused to engage in good faith and made clear that it is attempting to have it both ways:  trying to reserve the right to tell the jury that OEW's products practice the asserted patents, but flouting the discovery obligation requiring it to disclose upfront the bases for that contention.  Again, OEW is improperly attempting to "'hide the ball' in its infringement contentions." *Wilson Sporting Goods*, 2020 WL 5835320, at *2.

Apple accordingly requests that the Court strike OEW's deficient disclosure and compel OEW to supplement its contentions to comply with Standing Patent Rules 2.1.5 and 2.2.3.  OEW must either disclose the basis for its contention that its products practice the patents, or confirm that OEW will not rely, for <u>any</u> reason, on an assertion that its products practice the patents.

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully request that the Court grant the foregoing requested relief.

---

[55] Mead Decl., Ex. A at 004 (emphasis added).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:        October 7, 2020                  By: /s/ Heidi L. Keefe
                                                 HEIDI L. KEEFE (178960)
                                                 (hkeefe@cooley.com)
                                                 LOWELL D. MEAD (223989)
                                                 (lmead@cooley.com)
                                                 BENJAMIN S. LIN (232735)
                                                 (blin@cooley.com)
                                                 COOLEY LLP
                                                 3175 Hanover Street
                                                 Palo Alto, California  94304-1130
                                                 Telephone: +1 650 843 5000
                                                 Facsimile:  +1 650 849 7400

                                                 Attorneys for Defendant
                                                 Apple Inc.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

21

APPLE'S NOTICE OF MOTION AND MOTION TO
STRIKE
2:20-CV-06339-JAK-PD