# EXHIBIT C

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
T (949) 760-0404

Douglas G. Muehlhauser
Doug.Muehlhauser@knobbe.com

September 29, 2020

Heidi L. Keefe
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

Re:    *One-E-Way, Inc.,* Case No. 2:20-cv-06339-JSK-PD (C.D. Cal.)
       Our Reference No.: 1EWAYL.003L

Dear Heidi:

I write in response to your September 22, 2020 letter regarding OEW's infringement contentions. As stated in your letter, those contentions included over 120 pages identifying dozens of specific locations within the Bluetooth specification that fall within the scope of the claimed limitations. Apple publicly promotes all of the accused transmitter and receiver products as Bluetooth compliant. Presuming that is true, OEW's infringement contentions place Apple on specific notice as to how the accused products practice the wireless audio inventions recited by each of the patent claims identified in OEW's contentions. However, if it is Apple's position that it does not implement certain portions of the Bluetooth specification cited in OEW's infringement contentions, please identify which portions of the Bluetooth specification Apple contends its products do not implement.

As your letter makes clear, OEW's contentions put Apple on notice of the specific product lines that OEW is accusing of infringement. And as the infringement charts also make clear, OEW identified the specific aspects of the Bluetooth specification upon which its allegations of infringement are based. As OEW's complaint further makes clear, Apple has been on notice of at least the '391 patent since August 2014, when OEW identified that patent to Apple and explained that both transmitter and receiver products fall within the scope of OEW's claims. Thus, OEW's infringement contentions clearly give Apple full and fair notice that OEW is accusing the devices within the identified product lines that practice the identified Bluetooth protocols going back to August 2014. As we stated on our call yesterday, Apple is the entity in the best position to identify the devices within its own product lines that it has sold during this period, and whether those devices implemented the identified Bluetooth protocols. Thus, we believe Apple is sufficiently on notice of the individual devices within each product line that are at issue in the case. As an example, we did a simple search of publicly available information and identified the following products that appear to meet this criteria:

**Knobbe Martens**

**AirPods**
AirPods (1st gen), AirPods (2nd gen), AirPods Pro

**HomePod**

**iPhone**
iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, iPhone SE (1st gen), iPhone SE (2nd gen), iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XS, iPhone XS Max, iPhone XR, iPhone 8, iPhone 8 Plus, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max

**iPod**
iPod Touch (5th gen), iPod Touch (6th gen), iPod Touch (7th gen)

**iPad**
iPad (2017), iPad (2018), iPad (2019), iPad (2020), iPad Pro, iPad Pro (9.7"), iPad Pro (10.5"), iPad Pro (11") (1st gen), iPad Pro (11") (2nd gen), iPad Pro (12.9"), iPad Pro (12.9") (2nd gen.), iPad Pro (12.9") (3rd gen), iPad Pro (12.9") (4th gen), iPad Air, iPad Air (2019), iPad Air (2020), iPad Air 2, iPad Mini 2, iPad Mini 3, iPad Mini 4, iPad Mini (5th gen)

**Apple Watch**
Apple Watch, Apple Watch Series 1, Apple Watch Series 2, Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, Apple Watch Series 6, Apple Watch Edition, Apple Watch Edition Series 2, Apple Watch Edition Series 3, Apple Watch Edition Series 5, Apple Watch Nike+ Series 2, Apple Watch Nike+ Series 3, Apple Watch Nike+ Series 4, Apple Watch Nike Series 5, Apple Watch Nike Series 6, Apple Watch Hermes Series 2, Apple Watch Hermes Series 3, Apple Watch Hermes Series 4, Apple Watch Hermes Series 5, Apple Watch Hermes Series 6, Apple Watch SE, Apple Watch Studio SE, Apple Watch Nike SE, Apple Watch Sport, Apple Watch Studio Series 5, Apple Watch Studio Series 6

**Beats Wireless**
Powerbeats Wireless Earphones, Powerbeats High-Performance Wireless Earphones, Powerbeats Pro Wireless Earphones, Powerbeats$^2$ Wireless Earphones, Powerbeats$^3$ Wireless Earphones, Beats Solo Pro Wireless Noise Cancelling Headphones, Beats Solo Wireless Headphones, Beats Solo$^2$ Wireless Headphones, Beats Solo$^3$ Wireless Headphones, Beats Studio Wireless Headphones, Beats Studio$^2$ Wireless Headphones, Beats Studio$^3$ Wireless Headphones, Beats$^X$ Wireless Earphones, Urbeats Wireless, Beats Wireless Tour3, Beats Pill, Beats Pill 2.0, Beats Pill XL and Beats Pill+

The above list is subject to confirmation through discovery from Apple, the party in the best position to supply this information.

Your letter also contends that "There is no indication that One-E-Way even examined every product that it purports to accuse of infringement . . .." However, your letter does not state that any device within any of the accused product lines did <u>not</u> implement Bluetooth connectivity at any time

**Knobbe Martens**

since August 2014. If, by your September 22 letter, Apple is somehow contending that any device within those product lines did <u>not</u> implement Bluetooth connectivity, please immediately identify those devices.

With regard to your reference to S.P.R. 2.1.5 and 2.2.3 regarding OEW's own products, we do not share your interpretation of those rules. For example, your letter states One-E-Way's infringement contentions "act as if" One-E-Way never practiced its patents. There is nothing in the S.P.R. requirements that suggests that not offering an S.P.R. 2.1.5 contention results in the <u>opposite</u> factual finding, i.e., that a plaintiff's products <u>do not</u> practice the asserted patents. Thus, we are not sure how to interpret your "now or never" and "forever waived" allegations regarding this disclosure. What is it exactly that Apple contends that OEW is waiving? Is it your contention that OEW would waive the right to state the fact that its products are Bluetooth compliant? Or, that OEW's "websites claim that it practiced its patents," despite the fact that your letter verifies the existence of this claim? Please identify for us exactly what you believe OEW is allegedly waiving under S.P.R. 2.1.5 and 2.2.3, and any authority for your position.

Regarding patent ownership documents, your allegation that One-E-Way identified "only a selective and partial disclosure of documents" is incorrect. Mr. Woolfork assigned his ownership rights in the patents to One-E-Way, and only One-E-Way has ever held those ownership rights. At no time did 1624 O LLC ever have any ownership rights in the patents, nor does it have any security interest in the patents.

Below I turn to each of your enumerated alleged "deficiencies." We disagree with your characterization of each. As you know, we have no access to Apple's proprietary technical specifications, nor has the Court yet provided any claim constructions, and we are nowhere near expert discovery. That being said, below we offer some explanations that may help you better understand the infringement contentions. Additionally, when Apple produces the proprietary technical details of its products, particularly the Bluetooth-implementing components, we can provide further detail if necessary.

1. We were admittedly confused by Apple's confoundment over what a wireless receiver is, and how its wireless headphone and speaker products receive wireless transmissions. If it is Apple's position that its accused headphone and speaker products do not receive wireless transmissions during Bluetooth connectivity, please identify all bases for that position. In the meantime, if the express references to receivers in the Bluetooth specification do not resolve the issue for Apple, we expect that when Apple produces its proprietary technical specifications, we can provide whatever type of additional clarity Apple is hoping for.

2. Again, if Apple is taking the position that its iPhone or other Bluetooth transmitting products do not wirelessly transmit digital signals, or that such digital signals cannot transmit digital audio, please immediately identify such products. We believe the express references to transmitters in the Bluetooth specification should resolve the issue. Moreover, OEW's contentions provide examples of Apple promoting the accused transmitter devices as audio-playing devices. Apple's promotions further tout that the audio playing may be done using Bluetooth connectivity, and we expect that when Apple produces its proprietary technical specifications, we can provide additional clarity Apple may need.

3. We believe our reference to the corresponding sections of any applicable Bluetooth standard was self-explanatory. To the extent you are suggesting that OEW should be prevented from relying on the same features in other Bluetooth standards, your expectations are misplaced. OEW put Apple on notice of the infringing aspects described in the Bluetooth specification, wherever those aspects may be found in any applicable version of the Bluetooth specification. However, to put a finer point on this issue, the chart below shows where the corresponding disclosure of the Bluetooth 5.0 specification cited in our infringement charts can be found in versions 4.2, 4.1 and 4.0.

**Bluetooth Citation Cross-Reference Table**

| 5.0 | 4.2 | 4.1 | 4.0 |
| --- | --- | --- | --- |
| Vol. 1, Part A, Section 1 | Vol. 1, Part A, Section 1 | Vol. 1, Part A, Section 1 | Vol. 1, Part A, Section 1 |
| Vol. 1, Part A, Section 1.1 | Vol. 1, Part A, Section 1.1 | Vol. 1, Part A, Section 1.1 | Vol. 1, Part A, Section 1.1 |
| Vol. 1, Part A, Section 1.2 | Vol. 1, Part A, Section 1.2 | Vol. 1, Part A, Section 1.2 | Vol. 1, Part A, Section 1.2 |
| Vol. 1, Part A, Section 1.3 | Vol. 1, Part A, Section 1.3 | Vol. 1, Part A, Section 1.3 | Vol. 1, Part A, Section 1.3 |
| Vol. 1, Part A, Section 1.4 | Vol. 1, Part A, Section 1.4 | Vol. 1, Part A, Section 1.4 | Vol. 1, Part A, Section 1.4 |
| Vol. 1, Part A, Section 3.1.3 | Vol. 1, Part A, Section 3.1.3 | Vol. 1, Part A, Section 3.1.3 | Vol. 1, Part A, Section 3.1.3 |
| Vol. 1, Part A, Section 3.2.1 | Vol. 1, Part A, Section 3.2.1 | Vol. 1, Part A, Section 3.2.1 | Vol. 1, Part A, Section 3.2.1 |
| Vol. 1, Part A, Section 3.3 | Vol. 1, Part A, Section 3.3 | Vol. 1, Part A, Section 3.3 | Vol. 1, Part A, Section 3.3 |
| Vol. 1, Part A, Section 3.3.1 | Vol. 1, Part A, Section 3.3.1 | Vol. 1, Part A, Section 3.3.1 | Vol. 1, Part A, Section 3.3.1 |
| Vol. 1, Part A, Section 3.3.1.1.2 | Vol. 1, Part A, Section 3.3.1.1.2 | Vol. 1, Part A, Section 3.3.1.1.2 | Vol. 1, Part A, Section 3.3.1.1.2 |
| Vol. 2 Part A, Section 1 | Vol. 2 Part A, Section 1 | Vol. 2 Part A, Section 1 | Vol. 2 Part A, Section 1 |
| Vol. 2 Part A, Section 3.1 | Vol. 2 Part A, Section 3.1 | Vol. 2 Part A, Section 3.1 | Vol. 2 Part A, Section 3.1 |
| Vol. 2 Part A, Section 3.2 | Vol. 2 Part A, Section 3.2 | Vol. 2 Part A, Section 3.2 | Vol. 2 Part A, Section 3.2 |
| Vol. 2, Part A, Section 3.2.1 | Vol. 2, Part A, Section 3.2.1 | Vol. 2, Part A, Section 3.2.1 | Vol. 2, Part A, Section 3.2.1 |
| Vol. 2, Part A, Section 3.2.1.1 | Vol. 2, Part A, Section 3.2.1.1 | Vol. 2, Part A, Section 3.2.1.1 | Vol. 2, Part A, Section 3.2.1.1 |
| Vol. 2, Part A, Section 3.2.1.3 | Vol. 2, Part A, Section 3.2.1.3 | Vol. 2, Part A, Section 3.2.1.3 | Vol. 2, Part A, Section 3.2.1.3 |

| | | | |
|---|---|---|---|
| Vol. 2, Part A, Section 4.1.2 | Vol. 2, Part A, Section 4.1.2 | Vol. 2, Part A, Section 4.1.2 | Vol. 2, Part A, Section 4.1.2 |
| Vol. 2 Part A, Section 4.2 | Vol. 2 Part A, Section 4.2 | Vol. 2 Part A, Section 4.2 | Vol. 2 Part A, Section 4.2 |
| Vol. 2, Part A, Appendix C | Vol. 2, Part A, Appendix C | Vol. 2, Part A, Appendix C | Vol. 2, Part A, Appendix C |
| Vol. 2, Part B, Section 1 | Vol. 2, Part B, Section 1 | Vol. 2, Part B, Section 1 | Vol. 2, Part B, Section 1 |
| Vol. 2, Part B, Section 1.2 | Vol. 2, Part B, Section 1.2 | Vol. 2, Part B, Section 1.2 | Vol. 2, Part B, Section 1.2 |
| Vol. 2, Part B, Section 1.3 | Vol. 2, Part B, Section 1.3 | Vol. 2, Part B, Section 1.3 | Vol. 2, Part B, Section 1.3 |
| Vol. 2, Part B, Section 2 | Vol. 2, Part B, Section 2 | Vol. 2, Part B, Section 2 | Vol. 2, Part B, Section 2 |
| Vol. 2, Part B, Section 2.6.1 | Vol. 2, Part B, Section 2.6.1 | Vol. 2, Part B, Section 2.6.1 | Vol. 2, Part B, Section 2.6.1 |
| Vol. 2, Part B, Section 2.6.2 | Vol. 2, Part B, Section 2.6.2 | Vol. 2, Part B, Section 2.6.2 | Vol. 2, Part B, Section 2.6.2 |
| Vol. 2, Part B, Section 4.2 | Vol. 2, Part B, Section 4.2 | Vol. 2, Part B, Section 4.2 | Vol. 2, Part B, Section 4.2 |
| Vol. 2 Part B, Section 6.1.2 | Vol. 2 Part B, Section 6.1.2 | Vol. 2 Part B, Section 6.1.2 | Vol. 2 Part B, Section 6.1.2 |
| Vol. 2, Part B, Section 6.3 | Vol. 2, Part B, Section 6.3 | Vol. 2, Part B, Section 6.3 | Vol. 2, Part B, Section 6.3 |
| Vol. 2, Part B, Section 6.4 | Vol. 2, Part B, Section 6.4 | Vol. 2, Part B, Section 6.4 | Vol. 2, Part B, Section 6.4 |
| Vol. 2, Part B, Appendix A | Vol. 2, Part B, Appendix A | Vol. 2, Part B, Appendix A | Vol. 2, Part B, Appendix A |
| Vol. 2, Part B, Appendix A.5 | Vol. 2, Part B, Appendix A.5 | Vol. 2, Part B, Appendix A | Vol. 2, Part B, Appendix A |
| Vol. 2, Part C, Section 2.3 | Vol. 2, Part C, Section 2.3 | Vol. 2, Part C, Section 2.3 | Vol. 2, Part C, Section 2.3 |
| | | | |
| Advanced Audio Distribution v1.3.2, Abstract | Advanced Audio Distribution v1.3.1, Abstract | Advanced Audio Distribution v1.3, Abstract | |

As you can see in the chart above, every citation throughout all four versions of the specification (4.0, 4.1, 4.2, 5.0) is the same. However, even if the cited functionality did not appear in the exact same section, Apple would nevertheless be on notice of the accused functionality, regardless of what section it fell under.

4.   As your letter admits, the Bluetooth specification requires the use of certain bit sequences to operate in accordance with the specification. OEW's contentions identify a number of bit sequences, and thus Apple is on notice that there are multiple bit sequences that may satisfy the claim language.

For example, and of course subject to further discovery and any later claim construction or expert disclosures, at least the CAC, and the CAC in connection with the LT_ADDR, are such bit sequences. And, as admitted in your letter, Apple is on notice of both of these, among others, in view of OEW's infringement contentions.

5. We are again surprised by Apple's purported confusion here. As is well known, for any sound to be played for human hearing on the receiver end, any Bluetooth transmission must, among other things, be converted from the 2.4 GHz frequency band into a lower frequency range. So if it is Apple's position that none of its receivers so converts a Bluetooth transmitted signal, please provide all bases for that contention. Otherwise, in addition to the requirement that a Bluetooth receiver convert the received audio signal, we provided evidence of the conversion, such as the admitted low-power characteristics widely promoted by Apple. Furthermore, when Apple provides its proprietary technical specifications, the specific conversion implementation should be readily apparent.

6. We are not sure what Apple is getting at here. OEW identified digital packets, which include digital payloads, which may, for example, represent music data. Is Apple contending that OEW did not identify an original audio source, such as, for example, a particular digitally-represented song that may be used in a Bluetooth transmission? Apple publicly promotes its products as accomplishing the wireless transmission and playback of audio (e.g., music). If Apple contends that certain of its accused products do not engage in wireless communication involving a representation of an original audio signal, please immediately identify those products.

7. As an initial matter, claims that call for transmitters/receivers to be "configured" to communicate with receivers/transmitters do not require the identification of the complementary component – only that they are capable of so communicating. Accordingly, we disagree with the premise of your stated concern. In any event, any successful wireless relationship requires that the transmitter and receiver successfully communicate. Apple publicly instructs its users how to pair its transmitter products with a receiver, whether an Apple receiver or otherwise, to establish a Bluetooth connection, and likewise how to pair its receiver products with a transmitter, whether an Apple transmitter or otherwise, to establish a Bluetooth connection. We fail to see how anything related to this fundamental process prejudices Apple's ability to prepare its case with regard to these limitations.

8. OEW identified aspects of the Bluetooth specification that show transmitter/receiver communication conducted without the need for an intermediate device. If Apple contends that its receiver products do not wirelessly communicate directly with a Bluetooth transmitter, or that its transmitter products do not wirelessly communicate directly with a Bluetooth receiver, please identify those products.

9. OEW's infringement contentions identify piconet-based communication specified by Bluetooth, and describe that such piconet is established independent of the configuration of any other network, including establishing CDMA communication between transmitter and receiver irrespective of the configuration of any other network. Additional references cited in OEW's contentions establish this use of CDMA in Bluetooth communication. If Apple contends that its products do not employ CDMA when utilizing a Bluetooth connection, please immediately identify those products.

**Knobbe Martens**

10. As an initial matter, your paragraph regarding interference appears to conflate different claim phrases involving interference. Regardless, OEW's contentions specifically identify square-root raised cosign pulse shaping used by Bluetooth as one example of addressing intersymbol interference. OEW's contentions also identify Bluetooth's requirement for frequency hopping which avoids interference from other transmitters. And OEW's contentions further identify numerous examples of Apple's public promotion of the clarity and high quality audio of the accused products.

11. Please see the discussion above regarding the unique user code and CDMA. The use of the unique user code and CDMA communication establish that the receiver communicates only with the transmitter within the piconet rather than a transmitter outside of the piconet.

12. You do not specify which configurations Apple has uncertainty about. And while you apparently dismiss citations to "block quotes," the "block quotes" contain text that presumably explains the functionality that evidences the configuration in the recited claims. If you wish to examine any particular citations, please let us know which require any further explanation.

Please let us know if you would like to discuss any of these issues further. As we mentioned on our call yesterday, OEW does not believe Apple needs to produce all of the technical specifications for the accused devices. Looking at the infringement case from a high level, and considering relevant information proportional to the needs of the case, OEW believes it would lower the burden on Apple, at least at the outset of the case, to apply a targeted approach in document production. We will follow-up with some proposals.

Sincerely,

Douglas G. Muehlhauser

33602000