# EXHIBIT M

Application No.: 12/940,747
Attorney Docket No.: 1028.5

## REQUEST FOR CONTINUED EXAM AND RESPONSE TO THE FINAL REJECTION DATED 05/05/11

### THE EXAMINER INTERIVEW OF JUNE 7, 2011

The Applicant would like to thank Examiner Flanders for his courtesy and attention in participating in the telephonic interview on June 7, 2011 at 10 am.  The applicant has reviewed the Examiner's interview summary of June 15, 2011.  As is recited in that summary, a detailed discussion regarding the particular issue of a mobile transmitter and receiver in the present invention differs substantially in problem and solution to the prior art.  The Examiner agreed that the ISI problem is very different and requires a novel solution as is presented in the present invention.  The Applicant maintains that the claim language properly details this solution (see Claims 2, 4, 6, 7, and 12 "a digital audio receiver, capable of mobile operation," "mobile digital audio transmitter"; Claims 3, 5, 9, and 11 "is capable of being moved in any direction during operation"; Claim 8 "wherein said mobile digital audio receiver," "mobile digital audio transmitter"; and Claim 10 "is capable of mobile operation").  The Applicant maintains that the centralized and not portable systems of Li, and analog systems of Altstatt cannot suggest remedies to the host of issues confronted by one of ordinary skill in creating a wireless digital system that can operate while the single transmitter and receiver are mobile and in an environment with other transmissions.  The applicant also maintains that the presence of the DCR is novel and a patentable element of the present invention.  The Applicant again wishes to show his appreciation for the Examiner's time and thought extended during the interview.

### ADDITION OF CLAIMS 13-18

The applicant has added additional Claims 13-18 that clearly state the problem of intersymbol interference and the decoder and encoder elements of the present invention that solve this problem.  The ISI problem was discussed in the Examiner Interview, and the new claims seek to address the concerns of the Examiner, namely that the issue was not detailed.  These new claims indicate that a mobile transmitter and receiver have ISI issues that require special coding to resolve.  These new claims do not add new matter to the application and it is respectfully requested that they be entered and reviewed.

### RESPONSE TO REJECTION OF CLAIMS 1 - 12 UNDER 35 U.S.C. 103

A finding of obviousness requires that "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertain." 35 U.S.C. §103(a). In *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 82 USPQ2d 1385 (2007), the Supreme Court stated that the following factors set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966) control an obviousness inquiry: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; and (4) objective evidence of nonboviousness. *KSR*, 127 S. Ct. at 1734, 82 USPQ2d at 1388 (quoting *Graham*, 383 U.S. at 17-18, 14 USPQ at 467).

The *KSR* Court affirmed that it is "important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does . . . because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *KSR,* 127 S. Ct. at 1741, 82 USPQ2d at 1396. Once the *Graham* factors have been addressed, the Examiner may apply the TSM test, asking whether (l) a teaching, suggestion or motivation exists in the prior art to combine the references cited, and (2) one skilled in the art would have a reasonable expectation of success. *See* USPTO Guidelines at 57534.

Further, in order to establish *prima facie* obviousness of a claimed invention, all the claim limitations must be taught or suggested by the prior art. *In re Royka,* 490 F.2d 981, 180 USPQ 580 (CCPA 1974). Additionally, in considering a prior art reference, the reference must be considered in its entirety, *i.e.,* as a whole, including portions that would lead away from the claimed invention. *WL. Gore & Associates, Inc.* v. *Garlock. Inc., 721* F.2d 1540,220 USPQ 303 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984). A prior art reference is only appropriate where the "invention as a whole would be obvious to a person of ordinary skill in the field." In re Kumar, 418 F.3d 1361, 76 USPQ2d 1048, 1053 (Fed. Cir. 2005). Moreover, it is improper to combine references where the references teach away from their combination. *In re Grasselli,* 713 F.2d 731,743,218 USPQ 769, 779 (Fed. Cir. 1983). Indeed, "an applicant may rebut a prima facie case of

obviousness by showing that the prior art teaches away from the claimed invention *in any material respect." In re Peterson*, 315 F.3d 1325, 1331 (Fed. Cir. 2003) (Emphasis added). In making an obviousness rejection, Examiners must provide evidence and clear argument as to how the prior art suggests the invention. *Sud-Chemie v. Multisorb Techs.*, 554 F. 3d 1001 (Fed. Cir. 2009).

*Claims 1-12 Rejected as Unpatentable over Altstatt in View of Li and in Further View of Lindemann*

**Summary**

The applicant is aware that the prior art is taken as a whole, as is cited above, in the rejections posed. It is this very fact that the applicant urges the examiner to review this invention. As is outlined in detail below, the prior art in combination do not teach or suggest the present invention and provide no motivation for one of ordinary skill to combine and solve the novel problems posed by a mobile system working with a single mobile transmitter and a single mobile receiver in a space containing other transmissions in the digital spectrum. The present invention was first presented to the Patent Office in 2001 and must be evaluated at that time point, well before wireless audio transmission was commonplace in our current digital society. Three patents have been issued towards the present invention, each directed towards different novel aspects of transmitting digital audio with high fidelity and without interference. It is the applicant's position the static systems of Lindemann, centralized and not portable systems of Li, and analog systems of Altstatt cannot suggest remedies to the host of issues confronted by one of ordinary skill in creating a wireless digital system that can operate while the single transmitter and receiver are mobile and in an environment with other transmissions. The overarching deficiencies in each prior art cannot be remedied by the presence of the prior art as a whole. These deficiencies in the prior art make it implausible to combine them in 2001 to teach, suggest, or provide motivation to one of ordinary skill to produce the present invention. Below three major areas discussed in the Final Rejection are addressed: ISI, CDMA, and the DCR. It is expected that after a review of these three issues and how the prior art fail to address the solutions fashioned by the present invention, the rejections will be removed and the application placed into allowance.

**Amendments to the Claims**

Claims 3, 4, 5, 6, and 12 have been amended to state that the "wireless digital receiver" is *directly* communicable with the "digital audio transmitter." The omission of the word "directly" in the originally submitted claims was in error. The insertion of this word does not change the scope of the claim and should be allowed at this time in prosecution. Claims 10 and 11 have also been amended to change "audio source" as is written in the original claims to "audio player." Again this amendment corrects the original language and does not change the scope of the claims. The Applicant respectfully requests that the amendments be entered at this time. New Claims 13-18 have been added and it is respectfully requested that they be entered for examination.

**The Intersymbol Interference Problem**

In order to clearly demonstrate that the prior art combination does not teach or suggest the present invention, a description of the problem of Intersymbol interference ("ISI") is provided. ISI distorts the audio signal content, causing a major obstacle to the transmission of high data rate audio from an in-motion transmitter to an in-motion receiver. Referring to the underlined sections of the Exhibit IV text "Adaptive Filter Theory," Second Edition, by Simon Haykin, ISI "is caused by dispersion in the transmit filter, the transmission medium, and the receive filter . . . we usually find that intersymbol interference is the chief determining factor in the design of high-data rate transmission systems . . . intersymbol interference, if left unchecked, can result in erroneous decisions when the sampled signal at the channel output is compared with some preassigned threshold by means of a decision device." The problem of ISI is very different in static and mobile systems.

Within the present invention, both the digital audio transmitter and digital audio receiver may be in motion (see Claims 1 - 12), thus, the relative position and velocity of both the transmitter and receiver (both in-motion transmitter and in-motion receiver present spatial and temporal variations) will be constantly changing (e.g., a person running with the wireless digital audio system). Because ISI results when the in-motion digital audio transmitter attempts to communicate high symbol rate audio to the in-motion digital audio receiver, ISI must be suppressed. The present invention solves the ISI problem by maintaining fidelity of the high data rate audio signal while the in-motion

Application No.: 12/940,747
Attorney Docket No.: 1028.5

transmitter is in communication with the in-motion receiver. The ISI mitigation of the present invention is performed by, among other things, the claimed encoder ("a encoder operative to encode said original audio signal representation to reduce intersymbol interference") and decoder ("a decoder operative to decode the applied reduced intersymbol interference coding of said original audio signal representation") (Claims 1 - 12). This solution is the result of a novel inventive step in producing the present invention.

On page 5 of the Final Rejection (FRJ) mailed 05/05/2011, it is stated: "The combination of Altstatt in view of Li fails to explicitly disclose that the decoder is operative to decode reduced intersymbol interference coding of original audio signal representation." Thus, the rejection of the claim language "a decoder operative to decode the applied reduced intersymbol interference coding of said original audio signal representation" relies upon Lindemann. *It is important to note that Lindemann never discusses ISI.* Failure to identify the problem of ISI clearly demonstrates that this prior art, neither alone nor in combination can even suggest a solution to the present invention. *Furthermore, Roberts (6,418,558), which is also cited in this rejection, does not disclose the reduction of ISI in a mobile transmitter and mobile receiver system.* Roberts cannot teach or suggest how the unique problem of ISI in a mobile system can be attenuated. One of ordinary skill would have no motivation to look to these prior art to solve the ISI problem in a mobile system as has been accomplished by the present invention.

The FRJ relies upon the hypothetical scenario that Lindemann teaches reduction of ISI within a mobile transmitter/mobile receiver system (page 5 of the FRJ states: "Lindemann also includes that the transmission stream is created using a Reed-Solomon encoding and interleaver and a corresponding decoder in the decoder. Applying these teachings to the encoding of the combination discloses: . . . reduced intersymbol interference coding"). Reed-Solomon encoding and interleaving may be designed to address burst errors, but Lindemann does not teach Reed-Solomon encoding and interleaving for the purpose of reducing ISI in a mobile transmitter/mobile receiver system. Lindemann is silent about both mobility and ISI.

In fact, paragraph 0050 of Lindemann 2004/0223622, states: "The interleaver function performed by the Reed Solomon Encoder and Interleaver with Frame Marker

Insertion 407 protects against *burst errors* by scrambling adjacent bits across multiple Reed Solomon encoding blocks. This error protection system is a called a concatenated encoder with interleaving." (Emphasis added). To be clear, "Reed-Solomon (RS) are nonbinary codes which are capable of correcting errors which appear in bursts and are commonly used in concatenated coding systems" (reference underlined section of Exhibit V text "Wireless Communications Principles & Practice" by T. S. Rappaport). Bursts are the result of an additional unintended transmission source (also known as a jammer because it may unintentionally jam communications) as described in underlined section of Exhibit VI text "Introduction to Spread Spectrum Communications" by R.L. Peterson, R.E. Ziemer and D.E. Borth: "Jamming strategies which concentrate jamming resources on some fraction of the transmitted symbols using either pulsed or partial band techniques cause demodulator output errors to occur in bursts."

To clarify, "FIGURE 10-1. Covert communications process" and underlined section of Exhibit VII text "Introduction to Spread Spectrum Communications" by R.L. Peterson, R.E. Ziemer, and D.E. Borth states: "In any communications operation, there may be several ingredients or "players," as illustrated in Figure 10-1. First, there are the intended communicators, which make use of the transmitter and receiver shown in the figure. Second, there may be unintentional sources or jammers." Consequently, "These jammers produce bursts of errors . . . . To counter this difficulty, an interleaver is placed between the encoder and the modulator and a de-interleaver is placed between the demodulator and the decoder" (reference underlined section of Exhibit VIII text "Introduction to Spread Spectrum Communications" by R.L. Peterson, R.E. Ziemer, and D.E. Borth).

Lindemann does not teach a method of "Reed Solomon encoding/decoding to reduce ISI" as stated on page 6 of the FRJ. The FRJ misinterprets ISI (defined previously above) as interference radiating from an outside transmission source (burst errors). Moreover, Roberts is silent about reducing ISI within a wireless mobile transmitter/mobile receiver system. The rejection relies on a nonenabled hypothetical scenario, because neither Lindemann nor Roberts suggest a method of reducing ISI in a wireless mobile transmitter/mobile receiver system. The combination of Altstatt, Li, Lindemann (with Roberts) fails to teach or suggest the claim language "a decoder

Application No.: 12/940,747
Attorney Docket No.: 1028.5

operative to decode the applied reduced intersymbol interference coding of said original audio signal representation."

A further review of Roberts shows that there is not disclosure of Reed-Solomon/Interleaving to reduce ISI (see col. 5 lns. 62 – 67 and col. 6 lns. 1 – 3: "The clock signals for generating the carriers and the symbols representing the transmitted data may be locked to each other or generated from the same source, to reduce intersymbol interference significantly," "Another technique for reducing intersymbol interference is the transmission of each symbol with more than 360 degrees of phase in one cycle of its carrier, in order to allow some leeway in tracking the phase of a channel carrier in a receiving system." And see col. 45 lns. 9 – 14: "Again, a phase discontinuities exist at the ends of the total 405 degree phase degrees of this wave. In fact, this characteristic gives the excess-phase improvement an advantage over its primary function of providing a guard band for the symbol decoder, for reducing intersymbol interference," And see col. 46 lns. 10 – 19: "In the present system, however, it has been found that even very small frequency drifts between the 8 kHz symbol or flame clock and the frequencies of the tones upon which they ride can produce significant intersymbol interference and distortion at the receiving end. Such drifts tend to destroy the orthogonality of the channel signals produced by inverse FFT 140 in FIG. 21. The present system also, however, provides a simple, inexpensive way to overcome this problem. FIG. 51 shows a portion 4200 of the HDT clock/sync logic in CTSU 54, FIG. 3.")

In each of the above methods to reduce ISI presented by Roberts, none of them disclose the use of Reed-Solomon/Interleaving as a solution to suppress ISI. In fact, Roberts discloses Reed-Solomon for error detection/correction (as previously described above and see col. 6 lns. 5 – 12: "An embodiment is shown which handles both unencoded parity-type detection/correction and more multiple types of more powerful methods, such as Reed-Solomon encoding, in a transparent, real-time fashion, by packing the data words differently for each case. Moreover, the processor loading involved in these error-correction techniques can be spread out in time, so that not all channels need to be handled at the same time.") Page 5 of the FRJ incorrectly states "configure Reed Solomon decoding/interleaving to reduce ISI as is shown by Roberts 6,418,558," because Roberts does not disclose nor teach such a configuration.

It is clear that the degree of ISI becomes more severe in a mobile environment (i.e., a mobile transmitter communicating with a mobile receiver) given the following: a fading channel exhibits ISI in digital communications (reference underlined section of Exhibit IX text "Introduction to Spread Spectrum Communications" by R. Peterson, R. Ziemer, and D. Borth and referring to the underlined section of Exhibit X text "Spread Spectrum Systems With Commercial Applications," Third Edition, by Robert C. Dixon, *"The rate at which fades occur is a function of the rate at which the signal propagation paths change.  In fixed-position systems, the fading rate is determined by how fast the environment changes."*)  Lindemann (who does not address ISI) teaches a fixed-position system (i.e., immobile digital transmitter and immobile digital speaker receiver) and Roberts is silent as to mobile systems.  Given the fact that the rate at which fades occur (fading relative to ISI) is a function of the rate at which the signal propagation paths change, and that both the transmitter and receiver in the present invention are mobile, it should be clear that the propagation paths, or multipath in the present invention, create a type of ISI that was not considered in Roberts.

The teachings of Altstatt, Li, Lindemann and Roberts do not combine to obviate the present invention when taken as a whole.  Referencing the underlined section of Exhibit XI text "Spread Spectrum Systems with Commercial Applications," Third Edition, by Robert C. Dixon: "One cannot say, however, that using a spread spectrum signal *(e.g., CDMA)* does away with all multipath effects."  Emphasis added.  One may consider Bluetooth as an example of the Altstatt, Li, and Lindemann teachings based on the hypothetical scenario presented in the FRJ on pages 4 and 5.  ("It would have been obvious to one of ordinary skill in the art at the time the invention was made to apply the digital CDMA wireless communication of Li to replace the FM modulation communication as taught by Alstatt.  Li clearly teaches the device for use in portable implementations such as music and headphone audio reproductions."  And on page 5 "reducing intersymbol interference for CDMA transmission is notoriously well known in the art.")

At the present time, Bluetooth is known "for use in portable implementations such as music and headphone audio reproductions" (Reference page 4 of the FRJ).  As stated in the underlined section of Exhibit XII, Bluetooth Specification Version 1.0B, page 41

Application No.: 12/940,747
Attorney Docket No.: 1028.5

"Bluetooth is a short-range radio link intended to replace cable(s) connecting portable . . . electronic devices." (submitted to the USPTO on 08/04/2010 by way of the Information Disclosure Statement). The FRJ states that "reducing intersymbol interference for CDMA transmission is notoriously well known in the art," and the combination of Altstatt, Li and Lindemann (including Roberts) should lend a reduced ISI solution (for a portable mobile wireless system) that is "obvious to one of ordinary skill in the art."

Respectfully, the following application note provides evidence this rejection is in error. The application note (submitted to the USPTO on 04/14/2011 by way of the Information Disclosure Statement) is "Motorola's Bluetooth Solution to Interference Rejection and Coexistence with 802.11" and it states on page 1, section 2 (also see page 7, section 4) "The Bluetooth channel has unrecoverable Inter Symbol Interference (ISI)." A copy of this statement is conveniently located and underlined in Exhibit XIII. It is important to note that Motorola's application note was published in December of 2001, while the present invention was disclosed to Mr. Dennis Beech (the patent prosecution attorney at that time) in June of 2001 (Please see Exhibit XIV). The application note is, at least, evidence that reducing ISI within a system that contains a mobile transmitter and a mobile receiver is *not* "obvious to one of ordinary skill in the art" nor is it "notoriously well known in the art."

The ISI within Bluetooth, at that time, would not be in an "unrecoverable" state if the solution was "obvious to one of ordinary skill in the art" or "notoriously well known in the art." The Bluetooth specification referenced here (version 1.0B) was published in December of 1999 and it was not until December of 2001 when Motorola proposed a solution to reduce ISI in Bluetooth's system. Again it is important to note that the solution for reducing ISI in a wireless mobile digital audio transmitter/mobile digital audio receiver system was part of the present invention prior to the Motorola application note.

The claims should be in allowance on the presence of the encoder /decoder that function to reduce ISI that results when both the transmitter and receiver are in motion. These explanations remove the obviousness arguments for all remaining Claims 1- 12. Thus, for at least the reasons provided above, the prior art references are deficient in

Application No.: 12/940,747
Attorney Docket No.: 1028.5

providing the present invention solution, and the remaining Claims should be in
allowance.

### Digital Wireless Communications and CDMA

The claims are also rejected as being obviousness by the digital wireless
communication of Li could be replaced by the FM modulation communication taught in
Altstatt. Li is cited in the rejection for teaching a device for use in portable
implementations. It is stated that doing so is the substitution of one known element (i.e.,
the digital CDMA transmitter/receiver) for another (i.e., analog FM transmitter) to obtain
predictable results. The Applicant respectfully disagrees.

Altstatt does not disclose a direct one-to-one digital transmitter-to-headphone
communication link, thus, Altstatt cannot realize the benefits of such a digital link as
asserted (Examiner Office Action Mailed 08-09-2005, page 6: "However the system of
Altstatt is an analog transmission system that, in operation, lacks the benefits of a
digitally encoded and transmitted audio signal" and Office Action Mailed 05-17-2006,
page 6 and Office Action Mailed 10-02-2006, page 10: "However, the system of Altstatt
an analog transmission system that, operation lacks the benefits digitally encoded and
transmitted audio signal."). Additionally, Li clearly discloses a cellular communication
system (Li column 1 lines 57 – 63 "CDMA digital cellular communications system . . . ,"
column 6 lines 55 – 62 "IMT 2000 . . . IS95 . . . CDMA 2000). IMT 2000, IS95 and
CDMA 2000 are all cellular (i.e., cell phone) standards and each requires the *centralized*
control of a base station for operation. Li's centralized control base station system does
not teach or suggest a direct one-to-one transmitter-to-headphone communication link.

Based on what is taught by Altstatt and Li, applying "the digital CDMA wireless
communication of Li to replace the FM modulation communication as taught by Alstatt,"
as stated on page 4 of the Final Rejection (FRJ) mailed 05/05/2011, *requires* the
centralized control of the cellular base station taught by Li (Li column 7 lines 9 – 17 "The
exchange or the service-providing unit of the mobile net can store various multichannel
sounds needed by users, e.g. a great amount of MP3 music data. On request of users, the
exchange or the service-providing unit of the mobile net sends the suitable data to the
wideband CDMA base station, by which the multichannel data, e.g. MP3 music data, is
transmitted to the multichannel mobile equipment through the radio interface of the

wideband CDMA).  Li teaches the cellular base station approach for "bi-directional" sound communication and interference suppression (Li column 1 lines 57 – 63 "CDMA digital cellular communications system can, with large system capacity only restricted by interference … providing bi-directional … sound.").  As a result, the Altstatt/Li combination stated in the FRJ requires the cellular base station to meet the interference mitigation claim language "virtually free from interference from device transmitted signals operating in the portable wireless digital audio system spectrum" as found in Claims 4, 6, 7 - 12.

Regarding Claim 1, page 5 of the FRJ poses that the Altstatt/Li combination obviates the invention by "Replacing the FM transmitter/receiver implementation of Alstatt to use the digital CDMA communication."  This Altstatt/Li combination fails to obviate the invention based on at least the following.  The following explanation is applicable not only to Claim 1, but to the other remaining Claims (2-12) that stand rejected under the Altstatt/Li combination (and in view of Lindemann).

The Altstatt/Li combination does not suggest a portable audio system that includes a mobile transmitter and mobile receiver with a distributed architecture to one of ordinary skill.  To further support this position, the Examiner is referred to the underlined portion of Exhibit I (herein attached) "From WPANs to Personal Networks Technologies and Applications" where it is stated: "A wireless network can be distributed or centralized.  Distributed networks are those where each device accesses the medium individually and transmits the data without any central control . . . .  Centralized network architecture has one network element, which controls the communication of various devices."  The claim language "configured for independent CDMA communication operation" (as seen in Claims 1 - 12) reflects the distributed architecture and is supported by the specification of 10/027,391 application in paragraph 0016: "This . . . (CDMA) may be used to provide each user independent operation." (as well as other portions of the specification).

### The Direct Conversion Receiver

Within the present invention, the task of each receiver, among other things, is to mitigate interference in the vicinity in order to receive the correct transmission.  Thus, the direct conversion receiver (DCR) disclosed in the present invention (see Claims 1 - 12)

Application No.: 12/940,747
Attorney Docket No.: 1028.5

utilizes, among other things, "timing and synchronization to capture the correct bit sequence embedded in the received spread spectrum signal" (Parent Application 10/027,391 paragraph 0015). Furthermore, paragraph 0016 of the 10/027,391 application states: "Other code words from wireless digital audio systems 10 may appear as noise to a particular audio receiver 50. This may also be true for other device transmitted signals operating in the wireless digital audio system 10 spectrum." Moreover, Patent 7,412,294 column 3 lines 32-34 state: "The battery powered transmitter 20 sends the audio music information to the battery powered receiver 50 in digital packet format."

When packets are communicated over a wireless link it may be referred to as packet radio. The underlined section of the text "Wireless Communications Principles & Practice" has been provided for clarification (please see Exhibit II: "… called packet radio when used over a wireless link . . . . This benefit is valuable for the case of mobile services where the available bandwidth is limited. The packet radio approach supports intelligent protocols for data flow control and retransmission, which can provide highly reliable transfer in degraded channel conditions."). While other code words and/or other device transmitted signals are in the vicinity, they can create associated noise channel conditions at the receiver that may prevent the capture of the packet with the correct bit sequence. Based on the above disclosures, it is clear that both intended and unintended spread spectrum packet signals can appear at the receiver, but only the packet with the correct bit sequence is captured by the DCR in the present invention. Moreover, there exists several data delivery types (for clarification, please see section 16.2.1, of the book from Vijay Garg entitled Wireless Communications and Networking, (relative to the CDMA2000 cellular communication taught by Li) accessible on the following Google books website:
http://books.google.com/books?id=UE2wEc9NfB8C&pg=PA544&lpg=PA544&dq=cdm a2000+isdn&source=bl&ots=pB26eq6oLc&sig=nzleT7D4Q_P-KFMduSkb9b5015s&hl=en&ei=lZw8TKzcHZL4swOg0uDaCg&sa=X&oi=book_result &ct=result&resnum=2&ved=0CBoQ6AEwAQ#v=onepage&q=cdma2000%20isdn&f=fa lse).

That source states: "End user data-bearing services. Services that deliver any form of data on behalf of the mobile end user, including packet data (e.g., IP service),

circuit switched data services (e.g., B-ISDN emulation services), and SMS.  Packet data services conform to industry standard connection-oriented and connectionless packet data including IP-based protocols (e.g., transmission control protocol (TCP) and user data protocol (UDP) and OSI connectionless interworking protocol (CLIP)).  Circuit-switched data services that emulate international standards-defined, connection-oriented services such as asynchronous (async) dial-up access, fax, V.120 rate-adapted ISDN, and B-ISDN services."  Of these data delivery types available, the Altstatt/Li combination does not disclose or suggest a digital packet format for audio information coming from an audio player/source as is included in the claim language and does not obviate the invention.  The G.729 is a "compression algorithm for voice", "high quality audio cannot be transported reliably with this codec" as stated in http://en.wikipedia.org/wiki/G.729.  Paragraph 0018 of application 10/027,391 discloses high quality audio.  The digital packet and audio player/source disclosure is seen in Claims 2 – 12 of the present invention.

Moreover, the DCR of the present invention (based on paragraphs 0015 and 0016 of the 10/027,391 application, as well as Patent 7,412,294 column 3 lines 32-34) accounts for, among other things, (1) relevant timing metrics to capture the packet with the correct bit sequence embedded in the received spread spectrum signal within a in-motion transmitter, in-motion receiver, distributed architecture and (2) relevant synchronization metrics to capture the packet with the correct bit sequence embedded in the received spread spectrum signal within a in-motion transmitter, in-motion receiver, distributed architecture.  It should be noted that synchronization includes forms of acquisition and tracking (please reference underlined section of Exhibit III taken from "Digital Communications Techniques Signal Design and Detection").  As a result, timing and synchronization, to capture the intended signal components, has been described and broadly covers all types of timing and synchronization distributed architecture techniques to perform such a task.

Regarding Claims 1 – 12 of the present invention, the Altstatt/Li combination does not disclose a direct conversion receiver (DCR) as stated on pages 4 and 7 in the FRJ where Li's elements "(201)" and "(202)" are referenced.  There is no teaching or suggestion that Li's items 201 and 202 ("wideband CDMA demodulator") constitute a

Application No.: 12/940,747
Attorney Docket No.: 1028.5

DCR.  The DCR disclosed in the present invention, among other things, performs direct down conversion from radio frequency (RF) to baseband (or very near baseband), thus, omitting intermediate frequency (IF) down conversion components that are often used. The invention utilizes the DCR for, among other things, down conversion from RF-to-baseband (or very near baseband), eliminating unnecessary IF components, which reduces the size and power consumption of the module.  The Altstatt/Li combination does not teach a DCR nor does it suggest the use of a DCR within the invention.  Because one of ordinary skill would not be motivated in any way by Alstatt and Li to create the present invention with any reasonable expectation of success, the obviousness rejection should be removed.

In addition, the use of the DCR in the invention, suppresses aliasing noise effects by use of the anti-aliasing filters (typically low pass filters or some version thereof) located within the DCR, thus, aiding to preserve the fidelity of the transmitted high quality audio signal.  The Altstatt/Li combination does not teach or suggest a DCR, thus, cannot realize the benefits of the claim language "a direct conversion module configured to capture the packet with the correct bit sequence embedded in the received spread spectrum signal" (see Claims 1 - 12).  Neither Li, Altstatt, nor Lindemann (Lindemann discloses in paragraph 0057 "In the RF receiver embodiment of FIG. 3, …, The RF Downconverter 302 modulates the RF signal, using a sinusoid generated by the RF VCO 310, *down to IF frequency*.  The *IF signal is further down modulated* by the IF Demodulator 303. The output of the IF Demodulator is a complex signal consisting of I and Q--real, imaginary--running at the Chip Rate") alone or in any combination of the three teach, suggest, or disclose the DCR of the present invention.  One of ordinary skill would not be motivated or anticipate any success by reading the cited prior art to create a system containing a DCR to solve reception problems solved in the present invention. Claims 1- 12 should be in allowance on the presence of the DCR alone.

These explanations remove the obviousness arguments for all remaining Claims 1- 12.  Thus, for at least the reasons provided above, the prior art references are deficient in providing the present invention solution, and the remaining Claims should be in allowance.

Application No.: 12/940,747
Attorney Docket No.: 1028.5

Moreover, the applicant would like to state that any other arguments made by the Examiner and not explicitly addressed in this response are not agreed to by the applicant (e.g., the rejection to DPSK/CDMA for obviousness). Silence as to any arguments made by the examiner is not an assent to those arguments; the applicant respectfully asserts that all claims in their present condition are allowable and patentable.

*Amendment to the Specification*

The first paragraph of the specification has been amended to reflect the proper family history of this application. The changes make clear lineage of the application and are ministerial in nature. Language to be deleted is in strikethrough and language to be added is underlined. It is respectfully requested that this amendment be entered.

If there are any questions, concerns, or actions that can be taken to expedite the processing of this application, please do not hesitate to contact the applicant's representative.

August 2, 2011

Respectfully Submitted,

Megan E. Lyman, Registration No. 57,054
1816 Silver Mist Ct.
Raleigh, NC 27613
melyman@lymanpatents.com
(919) 341-4023 (phone)
(919) 341-0271 (fax)

Application No.: 12/940,747
Atty. Docket No.: 1028.5

CLAIMS

I claim:

1.      (Original)  A wireless digital audio headphone comprising:

        a portable digital audio headphone receiver configured to receive a unique user code bit sequence and a original audio signal representation in the form of packets, said portable digital audio headphone receiver comprising:

               a direct conversion module configured to capture said packets embedded in the received spread spectrum signal;

               a digital demodulator configured for independent CDMA communication operation;

               a decoder operative to decode reduced intersymbol interference coding of original audio signal representation;

               a digital-to-analog converter (DAC) generating an audio output of said original audio signal representation; and

               a module adapted to reproduce said generated audio output in response to the unique user code bit sequence being recognized.

2.      (Original)  A wireless digital audio headphone for receipt of a unique user code and a digital audio music representation signal in the form of a packet, said wireless digital audio headphone comprising:

        a digital audio receiver, capable of mobile operation, configured for direct digital wireless communication with a mobile digital audio transmitter;

        a direct conversion module configured to capture packets embedded in the received spread spectrum signal, the captured packets corresponding to the unique user code;

        a digital demodulator module configured for independent code division multiple access (CDMA) communication operation;

        a decoder operative to decode the applied reduced intersymbol interference coding of said audio music representation signal; and

Application No.: 12/940,747
Atty. Docket No.: 1028.5

a digital-to-analog converter (DAC) generating an audio output of said digital
audio music representation signal; and a module adapted to reproduce said
generated audio output, in response to the unique user code bit sequence is being
recognized.

3.       (Currently Amended)  A wireless digital audio transmitter operatively
coupled to a portable audio source and configured to transmit a unique user code
and an original audio signal representation in the form of packets, wherein said
digital audio transmitter coupled to said audio source, and configured to be <u>directly</u>
communicable with a mobile receiver, is capable of being moved in any direction
during operation, said wireless digital audio transmitter comprising:

an encoder operative to encode said original audio signal representation to
reduce intersymbol interference;

a channel encoder to reduce transmission errors; and

a digital modulator module configured for independent code division
multiple access (CDMA) communication operation.

4.       (Currently Amended)  A wireless digital audio receiver, capable of mobile
operation, configured to receive a unique user code and a original audio signal
representation in the form of packets, the wireless digital audio receiver further
configured to be <u>directly</u> communicable with a mobile digital audio transmitter, said
wireless digital audio receiver comprising:

a direct conversion module configured to capture packets embedded in the
received spread spectrum signal, the captured packets corresponding to the unique
user code;

a digital demodulator configured for independent CDMA communication
operation;

a decoder operative to decode reduced intersymbol interference coding of
said original audio signal representation;

a digital-to-analog converter (DAC) generating an audio output of said
original audio signal representation; and

Application No.: 12/940,747
Atty. Docket No.: 1028.5

a module adapted to reproduce said generated audio output, said audio
having been wirelessly transmitted from a portable audio source virtually free from
interference from device transmitted signals operating in the digital wireless audio
receiver spectrum.

5.    (Currently Amended)  A wireless digital audio transmitter operatively
coupled to a portable audio  source and configured to transmit a unique user code
and an original audio signal representation in the form of packets, wherein said
digital audio transmitter coupled to said audio source, and configured to be <u>directly</u>
communicable with a mobile receiver, is capable of being moved in any direction
during operation, said wireless digital audio transmitter comprising:

an encoder operative to encode said original audio signal representation to
reduce intersymbol interference;

an interleaver to reduce transmission errors; and

a digital modulator module configured for CDMA communication; independent
code division multiple access (CDMA) communication operation and utilizing
differential phase shift keying (DPSK) to modulate said original audio signal
representation.

6.    (Currently Amended)  A wireless digital audio receiver, capable of mobile
operation, configured to receive a unique user code and a original audio signal
representation in the form of packets, the wireless digital audio receiver further
configured to be <u>directly</u> communicable with a mobile digital audio transmitter, said
wireless digital audio receiver comprising:

a direct conversion module configured to capture packets embedded in the
received spread spectrum signal, the captured packets corresponding to the unique
user code;

a digital demodulator configured for independent CDMA communication
operation;

an de-interleaver generating a corresponding digital output;

3

a decoder operative to decode reduced intersymbol interference coding of said original audio signal representation;

a digital-to-analog converter (DAC) generating an audio output of said original audio signal representation; and

a module adapted to reproduce said generated audio output, said audio having been wirelessly transmitted from a portable audio source virtually free from interference from device transmitted signals operating in the digital wireless audio receiver spectrum.

7.    (Previously Presented)    A wireless digital audio headphone for receipt of a unique user code and a digital audio representation signal in a packet format, the unique user code configured to spread the said signal spectrum and further configured for independent communication operation, said wireless digital audio headphone comprising:

a digital audio receiver, capable of mobile operation, configured for direct digital wireless communication with a mobile digital audio transmitter, wherein said mobile digital audio transmitter is operatively coupled to a portable audio player;

a direct conversion module configured to capture the packets embedded in the received spread spectrum signal, the captured packets corresponding to the unique user code;

a decoder operative to decode the applied reduced intersymbol interference coding of said audio representation signal; and

a digital–to–analog converter generating an audio output of said digital audio representation signal; and a module adapted to reproduce said generated audio output, in response to the unique user code bit sequence being recognized; said audio output being virtually free from interference from device transmitted signals operating in the digital wireless audio receiver spectrum.

8.    (Previously Presented)    A wireless digital audio receiver, capable of mobile operation, configured to receive a unique user code and an original audio signal representation in the form of packets, the unique user code configured to spread the said signal spectrum and further configured for independent communication operation, the

Application No.: 12/940,747
Atty. Docket No.: 1028.5

wireless digital audio receiver further configured to be directly communicable with a mobile digital audio transmitter, wherein said mobile digital audio transmitter is operatively coupled to a portable audio player, said wireless digital audio receiver comprising:

a direct conversion module configured to capture packets embedded in the received spread spectrum signal, the captured packets corresponding to the unique user code;

a decoder operative to decode applied reduced intersymbol interference coding of said original audio signal representation ; and

a digital-to-analog converter generating an audio output of said original audio signal representation;

and a module adapted to reproduce said generated audio output, in response to the unique user code being recognized; said audio output being virtually free from interference from device transmitted signals operating in the digital wireless audio receiver spectrum.


9.      (Previously Presented)    A wireless digital audio transmitter operatively coupled to a portable audio player and configured to transmit a unique user code and an original audio signal representation in the form of packets, wherein said digital audio transmitter coupled to said audio player, and configured to be directly communicable with a wireless mobile receiver and capable of being moved in any direction during operation, said wireless digital audio transmitter comprising:

an encoder operative to encode said original audio signal representation to reduce intersymbol interference;

a digital modulator module configured for independent code division multiple access (CDMA) communication operation.


10.      (Currently Amended)    A portable wireless digital audio system for digital transmission of an original audio signal representation from a portable audio player to a portable digital audio headphone receiver, said portable wireless digital audio system comprising:

Application No.: 12/940,747
Atty. Docket No.: 1028.5

a digital audio transmitter operatively coupled to said portable audio player and transmitting a unique user code bit sequence with said original audio signal representation in packet format, wherein said digital audio transmitter operatively coupled to said audio player is capable of mobile operation, said digital audio transmitter comprising:

a encoder operative to encode said original audio signal representation to reduce intersymbol interference;

a digital modulator module configured for independent CDMA communication operation;

said digital audio transmitter configured for direct digital wireless communication with said portable digital audio headphone receiver, said portable digital audio headphone receiver comprising:

a direct conversion module configured to capture packets embedded in the received spread spectrum signal, the captured packets corresponding to the unique user code bit sequence;

a digital demodulator configured for independent CDMA communication operation;

a decoder operative to decode the applied reduced intersymbol interference coding of said original audio signal representation;

a digital-to-analog converter (DAC) generating an audio output of said original audio signal representation; and

a module adapted to reproduce said generated audio output, said audio having been wirelessly transmitted from said portable audio ~~source~~ player and reproduced virtually free from interference.

11.    (Currently Amended)    A portable wireless digital audio system for digital transmission of an original audio signal representation from a portable audio player to a digital audio receiver, said portable wireless digital audio system comprising:

a digital audio transmitter operatively coupled to said audio player and transmitting a unique user code with said original audio signal representation in packet format, wherein said digital audio transmitter coupled to said audio player is

Application No.: 12/940,747
Atty. Docket No.: 1028.5

capable of being moved in any direction during operation, said digital audio transmitter comprising:

an encoder operative to encode said original audio signal representation to reduce intersymbol interference;

a digital modulator module configured for independent code division multiple access (CDMA) communication operation and utilizing differential phase shift keying (DPSK) to modulate said original audio signal representation;

said digital audio receiver capable of being moved in any direction during operation and in direct wireless communication with said digital audio transmitter, said digital audio receiver comprising:

a direct conversion module configured to capture  packets embedded in the received spread spectrum signal, the captured packets corresponding to the unique user code;

a digital demodulator configured for independent CDMA communication operation;

a decoder operative to decode the applied reduced inter-symbol interference coding of said original audio signal representation;

a digital-to-analog converter  generating an audio output of said original audio signal representation; and

a module adapted to reproduce said generated audio output, said audio having been wirelessly transmitted from said  audio ~~source~~ <u>player</u> virtually free from interference.

12.    (Currently Amended)    A wireless digital audio receiver, capable of mobile operation, configured to receive a unique user code and a original audio signal representation in the form of packets, the wireless digital audio receiver further configured to be <u>directly</u> communicable with a mobile digital audio transmitter, said

Application No.: 12/940,747
Atty. Docket No.: 1028.5

wireless digital audio receiver comprising:

a direct conversion module configured to capture packets embedded in the received spread spectrum signal, the captured packets corresponding to the unique user code;

a digital demodulator configured for independent code division multiple access communication operation;

a decoder operative to decode reduced intersymbol interference coding of said original audio signal representation;

a digital-to-analog converter (DAC) generating an audio output of said original audio signal representation; and

a module adapted to reproduce said generated audio output, said audio having been wirelessly transmitted from a portable audio player virtually free from interference from device transmitted signals operating in the digital wireless audio receiver spectrum.

13.    (New)  A wireless digital audio headphone for receipt of a unique user code and a digital audio music representation signal in the form of a packet, said wireless digital audio headphone comprising:

a mobile digital audio receiver configured for direct digital wireless communication with a mobile digital audio transmitter;

a direct conversion module configured to capture packets embedded in the received spread spectrum signal, the captured packets corresponding to the unique user code;

a digital demodulator module configured for independent code division multiple access (CDMA) communication operation;

a decoder operative to receive and apply coding to reduce intersymbol interference of said audio representation signal respective to said headphone and said mobile digital audio transmitter; and

a digital-to-analog converter (DAC) generating an audio output of said digital audio music representation signal; and a module adapted to reproduce said generated audio output.

14.    (New) A mobile wireless digital audio receiver, configured to receive a unique user code and a original audio signal representation in the form of packets, said unique user code configured to spread the spectrum of said signal and further configured for independent communication operation, the wireless digital audio receiver further configured to be directly communicable with a mobile digital audio transmitter, said mobile wireless digital audio receiver comprising:

a decoder operative to receive and apply coding to reduce intersymbol interference of said audio representation signal respective to said mobile wireless digital audio receiver and said mobile digital audio transmitter;

a digital-to-analog converter generating an audio output of said original audio signal representation; and

a module adapted to reproduce said generated audio output.

15.    (New)    A wireless digital audio transmitter operatively coupled to a portable audio player and configured to transmit a unique user code and an original audio signal representation in the form of packets, wherein said digital audio transmitter coupled to said audio player, and configured to be directly communicable with a wireless mobile receiver, is mobile, said wireless digital audio transmitter comprising:

an encoder operative to encode said original audio signal representation to reduce intersymbol interference respective to mobile said digital audio transmitter coupled to said audio player and said mobile receiver; and

a digital modulator module configured for independent code division multiple access (CDMA) communication operation.

16.    (New)    A wireless digital audio transmitter operatively coupled to a audio player and configured to transmit a unique user code and an original audio signal representation in the form of packets, wherein said digital audio transmitter coupled to said audio player, and configured to be directly communicable with a wireless mobile receiver, is mobile, said wireless digital audio transmitter comprising:

Application No.: 12/940,747
Atty. Docket No.: 1028.5

an encoder operative to encode said original audio signal representation to reduce intersymbol interference respective to mobile said digital audio transmitter coupled to said audio player and said mobile receiver; and

a digital modulator module configured for independent code division multiple access (CDMA) communication operation and utilizing differential phase shift keying (DPSK) to modulate said original audio signal representation;


17.    (New) A wireless digital audio transmitter operatively coupled to a portable audio player and configured to transmit a unique user code and an original audio signal representation in the form of packets, wherein said digital audio transmitter coupled to said audio player, and configured to be directly communicable with a wireless mobile receiver, is mobile, the unique user code configured to spread the spectrum of said signal and further configured for independent communication operation, said wireless digital audio transmitter comprising:

an encoder operative to encode said original audio signal representation to reduce intersymbol interference respective to mobile said digital audio transmitter coupled to said audio player and said mobile receiver.


18.    (New) A wireless digital audio headphone for receipt of a unique user code and a digital audio representation signal in the form of a packet, said wireless digital audio headphone comprising:

a mobile digital audio receiver configured for direct digital wireless communication with a mobile digital audio transmitter;

a direct conversion module configured to capture packets embedded in the received spread spectrum signal, the captured packets corresponding to the unique user code;

a digital demodulator module configured for independent code division multiple access (CDMA) communication operation;

Application No.: 12/940,747
Atty. Docket No.: 1028.5

a decoder operative to receive and apply coding to reduce intersymbol interference of said audio representation signal respective to said headphone and said mobile digital audio transmitter; and

a digital-to-analog converter generating an audio output of said digital audio representation signal; and a module adapted to reproduce said generated audio output.