# EXHIBIT N

Application No. 12/940,747
Atty. Docket No.: 1028.5

RESPONSE TO THE OFFICE ACTION DATED 11/14/2011

## **Response to the Arguments Posed in The Present Office Action**

It states on page 2 of the present Office Action ("OA") that: "Lavelle (U.S. 6,678,892) filed 27, October 2000 is one of many issued patents that teaches of wireless digital communication to a headset." The applicant would like to point out that Lavelle does not teach wireless digital communication between an in-motion digital audio transmitter and in-motion digital audio receiver (e.g., a headset) as is claimed in the present invention.[1] Lavelle teaches a vehicle in-motion and within that vehicle exists a headset and transmitter mounted to the vehicle's body.[2] So while wireless transmission may have been conceived of in 2000, wireless transmission with an in-motion audio receiver and transmitter was not commonplace.

The Applicant does not ignore Altstatt that in pointing out that G.729 is a compression algorithm unequipped to transmit high quality audio (see page 10 of the OA). The argument provided by the Applicant is salient as the algorithm of G.729 could not be combined with the portable audio device of Altstatt to create a functioning unit.

As to the argument pertaining to intersymbol interference (ISI), it should be clarified that Lindemann applies Reed-Solomon encoding/decoding for the purpose of *detecting and correcting errors after a signal has been received.*[3] The OA also

---

[1] Parent application 10/027,391 to the present invention states: "Such use includes the portable player systems such as cassette tape players that may be used during exercising as for example running."

[2] See column 10, lines 11-15 of Lavelle, which state: "the entertainment unit being mounted against the interior roof of the vehicle, the entertainment unit may also be mounted against the front portion of the vehicle or a combination of the roof and the front portion of the vehicle."

[3] Lindemann paragraph 0061 states: "Each transmission frame is Reed Solomon decoded to generate fully error corrected Transmission Frames."

1

Application No. 12/940,747
Atty. Docket No.: 1028.5

recites Roberts (U.S. Patent No. 6,418,558) on page 7 to support the teaching of Reed-Solomon as an acceptable method of error detection.[4] Reed-Solomon, as referenced by Lindemann and Roberts, is directed toward *detecting and correcting the errors within a received signal*, (i.e., after the presence of a signal is detected, the signal is then analyzed for errors within the signal and then the errors are corrected). In stark contrast, the present invention reduces ISI for, among other things, lowering the error in *detecting the presence of the signal in the receiver*.[5]

The whole process of signal authentication in the present invention may be viewed as a three-step procedure:

> (1) detect the presence of the correct signal (present invention),
>
> (2) determine if any anomalies exist within the captured signal i.e., error detection (Reed-Solomon) and
>
> (3) correct the anomalies within the signal that have been identified i.e., error correction (Reed-Solomon).

Reed-Solomon is clearly defined on page 4 of the OA as "nonbinary codes, which are capable of *correcting errors*." Reed-Solomon does not teach or suggest the novel way of reducing intersymbol interference as utilized in the present invention. To use a rough analogy, if there were two solutions of getting from point A to point B, Reed Solomon would be a car and the present invention would be a jet. No one would argue that a car would obviate a jet, each's individual function, problem

---

[4] "**Some applications** demand more error detection and correction capability than others. An embodiment is shown which handles both unencoded parity-type detection/correction and more multiple types of more powerful methods, **such as Reed-Solomon encoding** . . . ." (emphasis added).

[5] Paragraph 0013 of parent application 10/027,391 states: "An encoder 36 may be used to reduce intersymbol interference (ISI) ... The reduction of ISI may lower the probability of a signal detection error in the audio receiver.").

2

Application No. 12/940,747
Atty. Docket No.: 1028.5

solving and utility are disparate, just as Reed-Solomon is to the ISI solution used in the present invention.

<u>Response to the Rejection of Claims 1-18 Under 35 U.S.C. 103</u>

A finding of obviousness requires that "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertain." 35 U.S.C. §103(a). In *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 82 USPQ2d 1385 (2007), the Supreme Court stated that the following factors set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966) control an obviousness inquiry: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; and (4) objective evidence of nonboviousness. *KSR*, 127 S. Ct. at 1734, 82 USPQ2d at 1388 (quoting *Graham*, 383 U.S. at 17-18, 14 USPQ at 467).

The *KSR* Court affirmed that it is "important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does . . . because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *KSR,* 127 S. Ct. at 1741, 82 USPQ2d at 1396. Once the *Graham* factors have been addressed, the Examiner may apply the TSM test, asking whether (l) a teaching, suggestion or motivation exists in the prior art to combine the references cited, and (2) one skilled in the art would have a reasonable expectation of success. *See* USPTO Guidelines at 57534.

Further, in order to establish *prima facie* obviousness of a claimed invention, all the claim limitations must be taught or suggested by the prior art. *In re Royka,* 490 F.2d 981, 180 USPQ 580 (CCPA 1974). Additionally, in considering a prior art reference, the reference must be considered in its entirety, *i.e.,* as a whole, including portions

3

Application No. 12/940,747
Atty. Docket No.: 1028.5

that would lead away from the claimed invention. *WL. Gore & Associates, Inc.* v. *Garlock. Inc., 721* F.2d 1540,220 USPQ 303 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984). A prior art reference is only appropriate where the "invention as a whole would be obvious to a person of ordinary skill in the field." In re Kumar, 418 F.3d 1361, 76 USPQ2d 1048, 1053 (Fed. Cir. 2005). Moreover, it is improper to combine references where the references teach away from their combination. *In re Grasselli,* 713 F.2d 731,743,218 USPQ 769, 779 (Fed. Cir. 1983). Indeed, "an applicant may rebut a prima facie case of obviousness by showing that the prior art teaches away from the claimed invention *in any material respect."  In re Peterson*, 315 F.3d 1325, 1331 (Fed. Cir. 2003) (Emphasis added). In making an obviousness rejection, Examiners must provide evidence and clear argument as to how the prior art suggests the invention. *Sud-Chemie v. Multisorb Techs.*, 554 F. 3d 1001 (Fed. Cir. 2009).

*Summary*

The applicant is well aware that the prior art is taken as a whole, as is cited above, in the rejections posed. It is in this light that the Applicant respectfully urges the Examiner to review this invention. As is outlined in detail below, the prior art in combination do not teach or suggest the present invention and provide no motivation for one of ordinary skill to combine and solve the novel problems posed by a mobile system working with a single mobile transmitter and a single mobile receiver in a space containing other transmissions in the digital wireless spectrum.

Li teaches the necessity of intermediate links, such as, a base station to transmit wireless digital audio, thus removing the Li/Altstatt combination that is cited for teaching a base device in the combination's wireless CDMA headphone set. The Reed-Solomon technique of reducing interference is inapplicable and founded on a disparate approach to reducing interference, removing Lindemann as prior art for teaching the reduction of intersymbol interference in a comparable device. Thus, there is nothing predictable about the present invention's functioning of high fidelity transmission and reception of digital audio directly between one transmitter

4

Application No. 12/940,747
Atty. Docket No.: 1028.5

and one receiver in the presence of other users, and the rejections should be removed (see page 16 of the OA).

*Amendments to the Claims*

Claims 1-4 and 9-18 have been amended to state that the reduction of ISI, among other things, is used to aid in "lowering signal detection error." This addition is supported Paragraph 0013 of parent application 10/027,391 that states: "An encoder 36 may be used to reduce intersymbol interference (ISI) .... The reduction of ISI may lower the probability of a signal detection error in the audio receiver." Claims 5-9 as well as 15 and 17 have also been amended to include the language "fuzzy set membership functionality to enhance detection of said unique user code" (as supported by Patent 7,865,258 column 3 lines 56 – 67 and column 4 lines 1 – 5). The Applicant respectfully requests that the amendments be entered at this time.

*The Combination of Altstatt and Li Cannot Obviate the Present Invention*

The shortcomings of Altstatt enumerated above are alleviated by the combination of Li in the OA as discussed above. In particular, in the rejection of Claim 1 there are many shortcomings of Altstatt, namely that it does not disclose a: (1) digital system, (2) a receiver that can receive unique user code bit sequence and an original audio signal representation in the form of packets, (3) a direct conversion module configured to capture the packets embedded in the received spread spectrum signal, (4) a digital demodulator configured for independent CDMA communication, (5) a decoder operative to decode reduced intersymbol interference coding or original audio signal representation, (6) a digital-to-analog converter generating an audio output of said original audio signal representation, and (7) a module adapted to reproduce said generated audio output in response to unique user code bit sequence being recognized.[6] An eighth missing characteristic could be added, namely, that Altstatt uses a knob for the user to adjust to minimize interference in a channel. Altstatt alone cannot suggest the present invention.

---

[6] See page 13 of the current Office Action.

5

Application No. 12/940,747
Atty. Docket No.: 1028.5

At least seven essential elements of the present invention are identified by the Examiner as not taught or suggested by Altstatt. The rejection relies on the interjection of Li to teach CDMA digital transmission, and on Lindemann to reduce intersymbol interference. Similar arguments can be applied to claims 2-17. Altstatt can only be arguably applied to teach a (1) a wireless audio headphone for the receipt of an audio music representation signal and (2) an audio receiver, capable of mobile operation, configured for direct wireless communication with a mobile audio transmitter. Although, in contrast to the present invention, Altstatt requires the user to manually suppress unintended interference (Altstatt column 7 lines 6-8).

The present invention necessitates a great deal of added complexity in its additional elements to achieve a novel wireless digital audio system as is described in each of the Claims. For each Claim, the OA rejections are based on Altstatt in combination with Li and Lindemann.

However, the combination of Altstatt and Li does not teach or suggest the present invention. This has been discussed previously, for example, on page 2 of the August 4, 2010 of the Applicant's response to the Final Rejection dated 06/07/2010. The Examiner understands that Altstatt does not disclose a direct one-to-one digital transmitter-to-headphone communication link, thus, it should also be understood that Altstatt cannot realize the benefits of such a digital link as asserted."[7] Moreover, Li clearly discloses a cellular communication system.[8] A CDMA cellular

---

[7] The Examiner's understanding is evidenced in the Office Action Mailed 08-09-2005, page 6: "However the system of Altstatt is an analog transmission system that, in operation, lacks the benefits of a digitally encoded and transmitted audio signal" and Office Action Mailed 05-17-2006, page 6 and Office Action Mailed 10-02-2006, page 10: "However, the system of Altstatt an analog transmission system that, operation lacks the benefits digitally encoded and transmitted audio signal."

[8] Li column 1 lines 57 – 63 "CDMA digital cellular communications system . . . ," See also Li column 6 lines 55 – 62 "IMT 2000 . . . IS95 . . . CDMA 2000. IMT 2000, IS95 and CDMA 2000 are all cellular (i.e., cell phone) standards and each requires the

6

Application No. 12/940,747
Atty. Docket No.: 1028.5

network is a time-synchronous system that requires intermediate links (not a one-to-one direct link), for example, a cell phone tower between end-to-end transmission and reception to suppress interference.

The instant OA asserts: "It would be obvious to one of ordinary skill in the art at the time the invention was made to apply the digital CDMA wireless communication of Li to replace the FM modulation communication as taught by Altstatt." (see pgs. 14-15). Claims 1-4 and 8-18 of the present invention specifically disclose a direct one-to-one transmitter/receiver communication link[9] that the Altstatt/Li combination cannot teach or suggest. A close review of Altstatt/Li combination reveals that intermediate equipment (or steps) is required for the transmitter and headphone receiver to communicate. For example, the Altstatt/Li system must wirelessly transmit audio (Altstatt) to, at least, a base station and/or a cell phone tower (Li) prior to the receiver headphone receiving the audio.

Any attempt to eliminate the intermediate base station and/or cell phone tower would cause interference resulting from unintended transmission sources. In contrast claim language in the present invention states: "said audio having been wirelessly transmitted and reproduced virtually free from interference from device transmitted signals operating in the . . . spectrum." The Examiner has approved this language in the past. Item 3 of the Advisory Action dated 07/27/2011 submits that

---

centralized control of a base station for operation. Li's centralized control base station system does not disclose a direct one-to-one transmitter-to-headphone communication link."

[9] For example, the in-motion transmitter/in-motion receiver embodiment language of Claim 2: "a digital audio receiver, capable of mobile operation, configured for direct digital wireless spread spectrum communication with a mobile digital audio transmitter."

7

Application No. 12/940,747
Atty. Docket No.: 1028.5

the language of "direct communication" (or "directly communicable") adheres to a one-to-one architecture embodiment.[10]

Figure 9.1 "Block diagram of a cellular system" of Exhibit I is submitted, as a visual aid, to exemplify the architecture required to "apply the communication of Li to replace the FM modulation communication as taught by Altstatt" (without interference from unintended transmission sources). Moreover, the present invention is, among other things, related to a time-asynchronous system. Some differences between a CDMA Cellular time-synchronous system and a time-asynchronous system are detailed in section 2.1 "Imperfect Orthogonality of CDMA Codes" on page 155 of Exhibit II. The reference clearly discloses the problems that exist when attempting to substitute the CDMA cellular time-synchronous system equipment for time-asynchronous system equipment (as stated on page 19 of the OA "simple substitution of one known element … for another … to obtain predictable results").

Because Altstatt and Li cannot be combined to produce a useable and functioning device to transmit audio wirelessly virtually free of interference, Altstatt/Li combination fails to teach or suggest the present invention. As this combination is relied upon to reject all claims in the present invention, it is respectfully requested that the rejections be removed and the application be allowed. The current amendments to the claims do not change the scope or the analysis of the Altstatt/Li combination.

---

[10] Item 3 of the Advisory Action states: "Previous they were only communicable, no direct requirement was present. The previous interpretation allowed for intermittent steps during communication while the new limitations preclude this interpretation."

8

Application No. 12/940,747
Atty. Docket No.: 1028.5

*The addition of Lindemann to the Altstatt/Li Combination does not Obviate Claims Directed to the Reduction of Intersymbol Interference*

This section addresses the arguments raised on page 15 of the OA. Namely, it is asserted by the Examiner that: "The combination of Altstatt in view of Li fails to explicitly disclose that the decoder is operative to decode reduced intersymbol interference coding." Lindemann is added into the combination and relied upon for the disclosure of Reed-Solomon encoding/decoding as described in Roberts. The problem with this is that Reed-Solomon encoding/decoding does not reduce interference for the same purpose or in the same manner as the reduction of intersymbol interference in the present invention. In fact, Reed-Solomon functions so disparately, that it could not teach or motivate the reduction of intersymbol interference in the present invention.

Simply, the combination of Altstatt, Li and Lindemann, does not teach or suggest the present invention. The combination provides no motivation to one skilled in the art to create the present invention as disclosed. As previously stated, claims 1-4 and 8-18 include language of direct communication, whereas Altstatt with Li necessarily rely on an intermediate cellular communication architecture to wirelessly link (end-to-end) a transmitter with a receiver for the purpose of communicating audio without interference from unintended transmitter devices. Moreover, Altstatt, Li and Lindemann do not teach or suggest the reduction of ISI for, among other things, lowering the error in *detecting the presence of the signal in the receiver* (as pointed out previously). None of the cited prior art contemplates ISI. And as previously discussed, Lindemann utilizes Reed-Solomon for the purpose of *detecting and correcting errors within a received signal,* not for *detecting the presence of the signal* (as stated in the specification and claims). The Applicant is not arguing that Lindemann is not solving a particular problem through use of Reed-Solomon. The Applicant is merely attempting to provide an understanding that Lindemann approaches his particular problem in such a disparate fashion to the present invention that Lindemann could not teach or suggest to one of ordinary skill how to

9

Application No. 12/940,747
Atty. Docket No.: 1028.5

solve interference in the unique and superior fashion presented in the claims of the instant application. It is clear that the prior art in combination cannot obviate the present inventions, the rejections should be removed and the application placed into allowance.

*DSPK is Not Notoriously well Known to be Used in CDMA Communication*

Page 20 of the OA states: "DPSK modulation is notoriously well known to be used in CDMA communication." The Applicant respectfully disagrees that the benefits of DPSK are well known within the present invention as applied in this rejection to Claim 5. The wireless digital audio system of the present application that consists of, among other things, independent CDMA wireless communication of high quality audio (from an audio player) between a mobile transmitter and mobile receiver in direct communication, reducing ISI, utilizing a packet format, and lowering the error in detecting a signal while suppressing unintended transmissions within the wireless spectrum. This apparatus is novel in light of all of the prior art and is patentable.

These explanations remove the obviousness arguments for all remaining Claims 1-18 and . Thus, it is respectfully requested that for at least the reasons provided above, the prior art references are deficient in providing the present invention solution, and the remaining Claims should be in allowance.

Moreover, the Applicant would like to state that any other arguments made by the Examiner and not explicitly addressed in this response are not agreed to by the Applicant (e.g., the rejection to packet form for obviousness, DCR, etc). Silence as to any arguments made by the Examiner is not an assent to those arguments; the Applicant respectfully asserts that all claims in their present condition are allowable and patentable.

10

Application No. 12/940,747
Atty. Docket No.: 1028.5

If there are any questions, concerns, or actions that can be taken to expedite the processing of this application, please do not hesitate to contact the Applicant's representative.

December 15, 2011

    Respectfully Submitted,

*[signature]*

    Megan E. Lyman, Registration No. 57,054
    1816 Silver Mist Ct.
    Raleigh, NC 27613
    melyman@lymanpatents.com
    (919) 341-4023 (phone)
    (919) 341-0271 (fax)